Andrews, J.
That there was negligence on the part of the defendant in changing the message before delivery, from a request by Brown that the plaintiff should send him $500, to a request for $5,000, is found by the referee, and the finding is fully justified by the proof; and that the plaintiff acted upon the message as delivered, and sent the $5,000 to *201 Brown, who afterward absconded having appropriated the money to his own use, is also established. It is clear, also, that except for the negligent mistake of the defendant, the loss would not have happened, or, at most, it would not have exceeded the sum which Brown requested the plaintiff to send him. The question is therefore presented, upon which courts are frequently called to pass, whether there is such a connection between the wrong alleged and the resulting injury, that in contemplation of law they stand related to each other as cause and effect, so as to give a right of action against the wrong-doer, and make him chargeable with the loss. The law does not undertake to hold a person who is chargeable with a breach of duty toward another, with all the possible consequences of his wrongful act. It, in general, takes cognizance only of those consequences which are the natural and probable result of the wrong complained of, and which, in the language of Pollock, C. B., in Rigley v. Hewitt (5 Exch., 240), may reasonably be expected to result under ordinary circumstances from the misconduct. Every injury is preceded by circumstances, if any one of which had been wanting the injury would not have happened. In some sense, therefore, each is a cause of the injury, but to fasten a legal responsibility for the injury upon every person whose wrongful act, however remote therefrom, had contributed to bring about a situation or condition which made the injury possible, would be an impracticable rule, and one which, if enforced; would, in most cases, inflict a punishment wholly disproportioned to the wrong. There is no serious conflict of authority in the statement of the general rule, that a wrong-doer is liable only for the natural and proximate consequences of his wrongful act, but, in the application of the rule to particular cases, there is often great difficulty, and the rule, if not qualified, is very broadly and liberally construed for the protection of the plaintiff, where the act of the wrong-doer was willful and malicious, or was committed fraudulently or recklessly, and without regard to consequences. In such cases, the law does not measure very carefully the distance between the *202 wrongful act and the injurious consequence in fixing the limit of responsibility, and what are called exemplary damages are sometimes allowed, not as a compensation to the plaintiff, but as a punishment for criminal, willful, or reckless misconduct of the defendant.
The rule which prescribes that the damages which may be recovered in actions of tort must be those which are the natural and proximate result of the wrong, does not require that the recovery shall be confined to damages which immediately flow from the wrongful act, nor are damages necesarily to be disallowed because they are connected with the wrong by intermediate agencies, through which' it has operated to produce the loss.
The Squib Case (2 Wm. Black., 892), and the Negro Boy Case (4 Den., 364), illustrate this proposition. In neither did the injury immediately result from the defendant’s act. But he set in motion a force which continued to operate until the injury was accomplished. If the last man who threw the squib had not thrown it the plaintiff would not have been injured; but, in throwing it, he acted instinctively for his own protection, and it was justly regarded as the act of the defendant, and a continuation of the original force; and the boy, who in trying to escape from the angry pursuit of the defendant knocked the faucet out of the cask of wine, was the force set in motion by the defendant which caused the loss. It is not easy, and it is probably impossible, to furnish any. single test by which it may be determined in all cases whether damages claimed in an action of tort are sufficiently proximate to authorize a recovery. They are considered too remote when, though arising out of the cause of action, they could not, in the ordinary course of things, be expected to have have arisen, and do not naturally flowfrom the wrong. (Mayne on Damages, 26.) So, also, where they have been immediately caused by the independent, willful, or tortious act of a third person, intervening between the misconduct of the defendant and the damage, if such intervening wrong could not naturally or reasonably have been anticipated. (Crain v. Petrie, 6 *203 Hill, 522; Vicars v. Wilcocks, 8 East, 1; Knight v. Gibbs, 1 A. & E., 43; Mayne on Dam., 40.) “ To maintain an action for special damages,” says Nelson, C. J., in Crain v. Petrie, “ they must appear to he the legal and natural consequences arising from the tort, and not from the wrongful act of a third person, remotely induced thereby. In other words, the damages must proceed wholly and exclusively from the injury complained of.”
The recovery allowed in this case cannot, I think, be maintained within the principles governing the liability of a defendant in an action for negligence. The mistake of the telegraph company was the antecedent of the loss sustained by the plaintiff, but it was not, in a juridical sense, the cause of it.
The plaintiff parted with his money by reason of the message, believing it to have been sent by Brown. He was willing to trust him with the $5,000, and the mistake of the company did not induce the confidence which the plaintiff had in his integrity. When the money came to the possession of Brown he held it as the agent and trustee of the plaintiff. The plaintiff did not lose his title to it. He could reclaim it, and he did, subsequently, recover a part of it by legal proceedings. If Brown had not, after receiving the money, wrongfully converted it, the plaintiff’s loss would have been comparatively trifling. The embezzlement could not reasonably have been expected, and did not naturally flow from the wrong of the defendant. The cause of the loss was the criminal act of Brown, conceived and executed after the defendant had ceased to have any relation to the money. The plaintiff’s right of action for the negligence was complete before the money was misappropriated by Brown; and, if suit had then been brought, the damages would not have been measured by the amount of money sent by the plaintiff. The most that can be said is, that by the negligence of the company, an opportunity was afforded Brown to commit a fraud upon the plaintiff. This does not, within the cases, make the company chargeable with the loss resulting from the conversion. *204 (See Bank of Ireland v. Evans' Trustees, 5 H. L. Cases, 389; Salem, Bank v. Gloucester Bank, 17 Mass., 1.)
The referee has found that the change in the message was the result of gross neligence upon the part of the defendant. The complaint is upon a liability for negligence simply. There is no pretence that the change in the message was intentionally or fraudulently made, and there is no evidence' of any conduct on the part of the defendant, its agents or servants, equivalent to fraud. The referee was justified in finding that the defendant omitted to use the ordinary skill which is practiced in the art of telegraphy, which omission he has denominated gross negligence, but the finding upon the evidence and facts in this case does not, I think, enlarge the measure of liability.
Tor the error of the referee, in respect to the measure of damages, the judgment should be reversed, and a new trial ordered, with costs, to abide the event.
All concur; Folger and Miller, JJ., not sitting.
Judgment reversed.