JAMES N. PAULDING, as Trustee, etc., Appellant, v. THE CHROME STEEL COMPANY et al., Respondents.

Proof that at the time of a transfer or assignment by a corporation it was in fact insolvent is not conclusive evidence that the transfer or assignment was made "in contemplation of the insolvency of such company," within the meaning of the statute (1 R. S. 603, § 4) declaring such a disposition of its property unlawful and void; to come within the prohibition of the statute the act must have been done because of existing or contemplated insolvency.

Money was loaned to a corporation in 1874 under an agreement with it that payment should be secured by chattel mortgage. A mortgage was accordingly executed by the president and secretary of the corporation, with the actual assent of the stockholders, but without the filing of a written assent in the county clerk's office as required by the act of 1871. (Chap. 481, Laws of 1871.) In 1879, the debt remaining unpaid, the

formal assent of the stockholders was given and filed as required by said act and the act of 1878 (Chap. 163, Laws of 1878), and a new mortgage was executed in lieu of the former one, and in pursuance and fulfillment of the original agreement. At this time the corporation was insolvent. *Held,* the evidence did not authorize a finding that the mortgage was given in contravention of the statute.

As to whether any but the stockholders of a corporation can complain that the statutory condition was not complied with, *quære.*

(Argued December 3, 1883; decided January 15, 1884.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made February 8, 1882, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a chattel mortgage, dated October 22, 1879, purporting to have been executed by defendant, the Chrome Steel Company.

The defense was that at the time of the execution of the mortgage the company was insolvent, and that the mortgage was executed in contemplation of insolvency.

The facts, so far as material, are stated in the opinion.

*B. F. Tracy* for appellant. The failure to obtain the consent of the stockholders, and file the same as required by statute, did not render the first two mortgages void. At most, they were but voidable. (1 Kyd on Corp. 69, 76, 78, 108 ; Angell & Ames on Corp., § 145 ; 2 Kent's Com. 282 ; *Reynolds* v. *Comm'rs Stark Co.,* 5 Ohio, 204 ; *White Water Valley C. Co.* v. *Valette,* 21 How. [U. S.] 414 ; *Greenpoint Sugar Co.* v. *Whitin,* 69 N. Y. 328 ; *Silver Lake B'k* v. *North,* 4 Johns. Ch. 370 ; *Nat. B'k* v. *Mathews,* 98 U. S. 621 ; *Jones* v. *Guaranty and Indemnity Co.,* 101 id. 628 ; *Chester Glass Co.* v. *Dewey,* 16 Mass. 102 ; *Steam Nav. Co.* v. *Weed,* 17 Barb. 378 ; *Leazure* v. *Hillegas,* 7 S. & R. 313 ; *Goundie* v. *Northampton Water Co.,* 7 Penn. St. 233 ; *Runyon* v. *Coster,* 14 Pet. 122 ; *Gold Mining Co.* v. *Nat. B'k,* 96 U. S. 640 ; *Fairfax's Devisee* v. *Hunter's Lessee,* 7 Cranch, 604.) But if the first two mortgages were void at law the agreement to give a valid

mortgage still remained and created an equitable lien upon the property in question. (Jones on Chattel Mortgages [2d ed.], §§ 170–173, note 1; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191; *Mitchell* v. *Winslow*, 2 Story, 630–644; *Smithurst* v. *Edmonds*, 14 N. J. Eq. 408; *Geners* v. *Wright*, 18 id. 330; *McCaffrey* v. *Wooden*, 65 N. Y. 459; *Hale* v. *Omaha Nat. B'k*, 49 id. 626; *Weisner* v. *Ocumpaugh*, 71 id. 113; *Husted* v. *Ingraham*, 75 id. 251; *Wood* v. *Lester*, 29 Barb. 145; 1 Story's Eq. Jur., § 64 g; *Dodge* v. *Williams*, 1 Abb. Ct. of App. Dec. 517; *Craig* v. *Leslie*, 3 Wheat. 578; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284–302; *Lanning* v. *Tompkins*, 45 id. 316; *Haverly* v. *Becker*, 4 Comst. 170; *Delaire* v. *Keenan*, 3 Dessauss. 74; *In re Howe*, 1 Paige, 125–128; *Dwight* v. *Newell*, 3 Comst. 185; *White* v. *Carpenter*, 2 Paige, 217–266; *Arnold* v. *Patrick*, 6 id. 310–315; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284; *Payne* v. *Wilson*, 74 N. Y. 348; Willard's Eq. Jur. 442–443; Story's Eq. Jur., § 1503 b; *Whitford* v. *Gaugain*, 3 Hare, 416.) That the agreement to give a mortgage upon the property in question is one a specific performance of which would be enforced in equity there can be no doubt. (Jones on Mortgages, § 163; Jones on Chattel Mortgages, § 3; *Phyfe* v. *Wardell*, 5 Paige's Ch. 282; *Crary* v. *Smith*, 2 Comst. 62; *Dodge* v. *Willman*, 1 Abb. Ct. of App. Dec. 517; *Hale* v. *Omaha Nat. B'k*, 49 N. Y. 626; *Hunt* v. *Rhodes*, 1 Pet. 1–13.) If the plaintiff had either a legal or an equitable lien upon the property, taking another or different conveyance of the same property for the purpose of perfecting the lien, is not a transfer or assignment of property made in contemplation of bankruptcy or insolvency within the meaning of any bankrupt or insolvent statute. (*Clark* v. *Iselin*, 21 Wall. 360–368; *Cook* v. *Tullis*, 18 id. 332; *Sawyer* v. *Turpin*, 1 Otto, 114; *Burnheisel* v. *Firman*, 11 Bankr. Reg. 505; *Brett* v. *Carter*, 14 id. 301; *Watson* v. *Taylor*, 21 Wall. 378; *Tiffany* v. *Boatman's Savings Inst'n*, 18 id. 375–388; *In re Potts*, Crabbe [Penn.], 469; *Hutton* v. *Canthvell*, 1 E. & B. 15–20; *Harris* v. *Rickett*, 4 H. & N. 1–6; *Burdick* v. *Jackson*, 7 Hun, 488; *Castle* v. *Lewis*, 77 N. Y. 131; *Hunt*

v. *Mortimer*, 10 B. & C. 43; 21 Eng. Com. Law R. 29.)   A
mortgagee of chattels may pursue all his remedies concur-
rently.   (Jones on Chattel Mortgages [2d ed.], § 758.)

*Winchester Britton* for respondent.   As the mortgage was
executed and delivered in direct violation of the statute (1 R.
S. 603, § 4), it was wholly void.   (*Bowen* v. *Lesse*, 5 Hill,
223.)   The Chrome Steel Company being actually insolvent
at the time the mortgage was made, the statute applies.
(*Robinson* v. *Bank*, 21 N. Y. 406; *Harris* v. *Thomp-
son*, 15 Barb. 62; *Loring* v. *Company*, 30 id. 644; 36
id. 330; *Brouwer* v. *Harbeck*, 55 id. 589; *Walkenshaw* v.
*Perzel*, 32 How. 233; *Herrick* v. *Borst*, 4 Hill, 650.)   The
neglect to refile the original mortgages as required by law
would have rendered void their lien as against Rowan's judg-
ment.   (Laws of 1833, chap. 279, § 13; Laws of 1873, chap.
501, § 3; *Randall* v. *Dunbar*, 14 Weekly Dig. 332; *Stewart*
v. *Beale*, 7 Hun, 405; affirmed, 68 N. Y. 629; *Thompson* v.
*Van Vechten*, 27 id. 581–583; *Brackett* v. *Harvey*, 25 Hun,
504; 91 N. Y. 214; *Ely* v. *Carnley*, 19 id. 498; *Porter* v.
*Parmley*, 52 id. 185; *Best* v. *Staple*, 61 id. 71; *Steele* v. *Ben-
ham*, 84 id. 634.)   There is no force in the suggestion that the
clause prohibiting corporations from transferring their property
in contemplation of insolvency was repealed by Laws of 1871,
chapter 481, or Laws of 1878, chapter 163.   (Laws of 1848,
chap. 40, § 2; *People* v. *Smith*, 69 N. Y. 177; 5 Hill, 223.)
A mortgage like the one in suit cannot be made to raise money
to carry on the business of a corporation.   (*Carpenter* v. *Black
Hawk Gold Mining Co.*, 65 N. Y. 43, 48, 49–52.)

DANFORTH, J.   The material question in this case arises
upon the finding of the trial court that the Chrome Steel
Company was insolvent, and while in this condition made, and
the plaintiff received, the mortgage in controversy, " in con-
templation of the insolvency of the company."   It was fairly
presented by the answer, was the point mainly if not altogether
litigated at the trial, and upon it the court declared the mort-

gage invalid. Other points have also been discussed by the respondents' counsel, but we do not think it necessary to decide them, nor that they can fairly come here until after they have been presented to a trial court. As to the one really before us, it is obvious the trial judge disregarded other circumstances in the case, and held the fact of insolvency to be conclusive evidence that the mortgage was made in contemplation of it — that is, of insolvency — and so brought it within the statute which makes it unlawful for any incorporated company " to make any transfer or assignment in contemplation of the insolvency of such company " to any person, and if made, declares such transfer or assignment " utterly void." (1 R. S., part 1, chap. 18, title 4, § 4, p. 603.)

In this conclusion we think there was error. If correct, it would prevent a corporation in such condition from paying a debt in due course of business, with money, or securing it under any circumstances by assignment of part of its goods or choses in action, although threatened with suit, or actually sued by a creditor, even if by such payment or assignment its officers supposed that the company would be relieved from embarrassment, and enabled to enter a more prosperous career. Yet all these things a debtor might do without having any bankruptcy in view, and it was so held in *Alderson* v. *Temple* (4 Burr. 2235), and to that effect are *Tiffany* v. *Boatman's Institution* (18 Wall. 375, 388) and *Dutcher* v. *Importers and Traders' Bank* (59 N. Y. 5). It would also disregard the distinction clearly intimated in the statute (*supra*, § 4) between a transfer to an officer or stockholder, and one to a person who held neither of these positions, and give it the same meaning as if, like part 1, art. 1, chap. 18, title 2, § 9, 1 R. S., p. 591, it prohibited such assignment or transfer by a corporation " when insolvent or in contemplation of insolvency," with the intention of giving a preference to any particular creditor.

In *Haxton* v. *Bishop* (3 Wend. 13) it was suggested by the court that an act to be in contemplation of insolvency must be done before insolvency, or in view of that future condition or state of its affairs expected or contemplated to take place after

the act was done.   This was not altogether satisfactory, and in
*Robinson* v. *Bank of Attica* (21 N. Y. 406) it was held that
such construction was too narrow, and that an act in contem-
plation of existing insolvency was as much within the statute
as one done in anticipation of future insolvency.   This may
be taken, therefore, as the true construction of the statute;
but the act in either case must be in anticipation or in view of
that condition.   In other words, the act must have been done
because of existing or anticipated insolvency, or else it is not
prohibited.   It is not enough that insolvency and the act co-
exist.   It was accordingly held in *Dutcher* v. *Importers and
Traders' Bank* (*supra*) that payment in the usual course of
business, although by an insolvent corporation, was not pro-
hibited nor a sale so made, and as the evidence tended to show
that the payment objected to would have been made in the
same way had the paying bank been entirely solvent the judg-
ment directed by the trial judge, on the ground that actual
insolvency was conclusive evidence of the intent or purpose
of payment, was reversed.

   The principle upon which that case was decided applies with
great force to the one before us.   It is obvious not only from
the evidence, but, in substance, from the findings of the learned
trial judge, that the mortgage was the natural result of a legiti-
mate and honest effort on the part of the company to secure
payment of a debt contracted for money borrowed in the usual
course of business.   The money was advanced under an agree-
ment by the trustees of the company that its payment should
be secured by chattel mortgage, and this was executed on the
7th of October, 1874, by its president and secretary, under the
direction of its trustees, who were also the only stockholders
of the company.   It conveyed the property described in the
complaint, and after the maturity of the debt in September,
1877, a new mortgage was executed by the same authority in
lieu of, and as a substitute for, the one of 1874, conveying the
same property and securing the same debt.   But in neither
case was the written assent of the stockholders, or any of them,
filed in the office of the clerk of the county, as required by

the statute. (Session Laws of 1871, chap. 481, § 2.) The debt, however, remained due and unpaid, and prior to the 22d of December, 1879, the formal consent of the stockholders, required by this act and the act of 1878 (Chap. 163), was given and filed, and on that day the mortgage in question was duly executed to secure the same debt, and, as the court finds, "in lieu of, and as a substitute for, the said two prior mortgages and each of them, and for the purpose of giving security, and in pursuance and fulfillment of the original agreement" made by the company "prior to the loaning of the money, and in consideration of, and in reliance upon which the said money was loaned."

It is difficult to see how under these circumstances it could properly be held that the mortgage was given in contravention of the statute, or how in any way the insolvency of the company induced its execution. In the case cited (*Dutcher* v. *Importers and Traders' Bank, supra*) it is in substance held that a company, although insolvent, may deal with its creditors by making payment, or in the ordinary course of business transfer or sell its property. It follows then that some other fact must be proved before it can be held that a transfer thus made is fraudulent; and in considering that question the date of the agreement pursuant to which any transfer is made, and not the day when the conveyance is in fact executed, is to be regarded.

As between the parties at any rate, the fulfillment of the agreement relates back to the time when the obligation was incurred. (*Ex parte Kevan*, L. R., 9 Ch. App. Cas. 752; *Castle* v. *Lewis*, 78 N. Y. 131.) Here the finding of the learned judge to which I have above referred, and which is supported by evidence, shows that the motive operating with the company was a desire to discharge the obligation arising from its undertaking to give a mortgage, which should be a valid and sufficient security for the debt contracted. By that undertaking the property now covered by the mortgage was specifically appropriated to that purpose, and as the mortgage is found to have been made in pursuance of that contract, it cannot properly be said to have been executed because, or in contemplation, of

insolvency. (*Castle* v. *Lewis, supra.*) "When an act is done that is right to be done," says Lord Mansfield, "and the single motive is not to give an unjust preference, the creditor will have a preference" (*Harman* v. *Fishar*, 1 Cowper, 117), "as if," he adds, "a payment were made, or an act done in pursuance of a prior agreement." So when money is paid under a special contract for repayment out of a certain fund, made when the money was lent, this will not amount to a fraudulent preference, and such payment is said to be not even voluntary. (*Hunt* v. *Mortimer*, 10 B. & C. 44.)

The statute makes the question depend upon what was passing in the minds of the officers of the company when the mortgage was executed. If they acted in pursuance of a previous contract, by which the company was bound, either in law, or equity, or otherwise, under such circumstances that it could not have a choice, the condition of insolvency became of no moment, for it was not in contemplation, or in their minds. The intention in such a case must be referred to an actual obligation which the debtor was bound to fulfill. (*Ex parte Hodgkin*, L. R., 20 Eq. Cases, 746; *Ex parte Kevan*, *supra.*) The learned counsel for the respondent argues that the agreement to which I have referred, and under which the mortgage was given, was itself invalid for want of that previous assent which the statutes of 1871 and 1877 (*supra*) required. That assent has been considered by us as exacted for the benefit and protection of stockholders against improvident or corrupt acts of the officers of the corporation, and not because the legislature regarded the mortgaging of corporate property as improper *per se*, and it is at least doubtful whether any but stockholders can complain that the condition was not complied with. (*Greenpoint Sugar Co.* v. *Whitin*, 69 N. Y. 328.) The question, however, does not arise here, for neither the policy of the act nor its beneficent action can be invoked for the agreement was in fact made and the mortgage authorized by all the stockholders. They were, it is true, also trustees, but their assent in that capacity must bind them in both characters. We think the mortgage is good between the

parties to it, and that the insolvency of the company does not authorize the conclusion of the trial court.

It follows that the appeal was well taken, and that the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.