## VOLUME 103,

### .AND

# New York State Reporter,

## VOLUME 137.

(118 App. Div. 40)

## VAN SLYCK v. WARNER.

(Supreme Court, Appellate Division, First Department.   March 8, 1907.)

CORPORATIONS—INSOLVENCY—PLEDGES—PREFERENCES.

 Where a corporation, to secure past indebtedness and a present loan, assigned notes and security held by it, and later, with the consent of the assignee, took the same back and gave in their place its own notes and trade-marks as security, the fact that the corporation was insolvent at the time of the assignments does not show that they were for the purpose of giving the preference prohibited by section 48 of the stock corporation law (Laws 1892, p. 1838, c. 688), where there was no evidence that the assignee knew of the insolvency at the time.

Appeal from Special Term, New York County.

Action by George F. Van Slyck, as receiver, against William R. Warner, as surviving member of the firm of William R. Warner & Co.   Judgment for plaintiff, and defendant appeals.   Reversed and remanded.

The facts, so far as the same are necessary to be considered on the question presented, are as follows:  On and prior to the 25th of March, 1899, J. F. Smith & Co., a domestic corporation, was engaged in the sale, under duly registered trade-marks, of certain proprietary remedies which were manufactured for it by the firm of William R. Warner & Co., of which the appellant is the surviving member, and for which it was then indebted to such firm in the sum of about $2,700.  To secure the payment of this indebtedness and to procure a further credit of $800, and a loan in cash of $1,000, it proposed to assign and transfer to the firm 176 promissory notes of $25 each, aggregating $4,400, together with certain collateral securing their pay-

ment, made by the firm of Baker & Berringer, one of such notes falling due each week thereafter. The proposition was accepted, and then, or some time in April following, the cash was advanced and the notes and collateral transferred. The business betweeen the corporation and the firm continued in the usual manner until the 5th of the following July, when the firm, at the request of the corporation, returned to it these notes (except such as had in the meantime been paid), together with the collateral accompanying them, and in place thereof accepted 34 notes of the corporation of $125 each, one of which fell due on the 5th of each month thereafter, aggregating $4,250, the amount of the indebtedness then due, and for the purpose of securing payment of these notes the corporation assigned the trade-marks above alluded to. On the 28th of September, 1899, the corporation, for $1,500 in cash, assigned and transferred to one Woodruff subject to Warner & Co.'s lien, such trade-marks, together with the formulæ for making the medicines. Warner & Co. were notified of the transfer and its terms, and Woodruff thereafter, either out of his own funds or from the proceeds derived from the sales of the medicines, paid the notes held by Warner & Co., when the assignment to it and the formulæ for the medicines were forwarded to him, by express, at St. Louis, where he resided. After the assignment to Woodruff he continued to manufacture the medicines and sell the same, through different agents, until the 30th of January, 1905, when he sold the trade-marks, together with the formulæ, to J. F. Ballard, of St. Louis, who continued the manufacture and sale of the medicines until about the time the judgment in this action was rendered. On the 27th of November, 1900, the plaintiff in this action, in sequestration proceedings, was appointed a receiver of the corporation, and in March, 1901, upon the theory that the transfer of the trade-marks and formulæ to Woodruff was invalid, he applied to the court for leave to sell the same. Permission was given, and after such sale had been advertised for 10 days the same was sold at public auction for $100 to Howard H. Williams, who acted for the United States Security Company, to which a formal transfer was made. Williams is counsel for the receiver in this action. He was then the secretary of the Nassau Advertising Company, the principal creditor of the J. F. Smith & Co., and also an officer of the United States Security Company. Immediately following the sale to the United States Security Company Williams, acting on behalf of the Nassau Advertising Company, caused to be organized a corporation known as the "J. F. Smith & Co., Incorporated 1901," to which was assigned whatever right or interest was acquired by the United States Security Company at the receiver's sale, and also the claims which the advertising company had against the corporation, of which the plaintiff is receiver, and these constituted its entire assets and capital. Shortly thereafter the J. F. Smith & Co., Incorporated 1901, brought an action against Woodruff to restrain his using the trade-marks assigned and transferred to him on the 28th of September, 1899, by the J. F. Smith & Co., and for an accounting. In the answer interposed by Woodruff he asked that the plaintiff in that action be restrained from using the trade-marks and also for an accounting. The trial of that action resulted in a judgment on the 14th of April, 1904, which dismissed the complaint and restrained the plaintiff from using the trade-marks, and directing that it account to Woodruff for the medicines sold. At this time Williams was the attorney or counsel for the J. F. Smith & Co., Incorporated 1901, and also for the receiver; he testifying that their interests were identical. An appeal was taken by the corporation from the judgment against it; but, instead of prosecuting that it presented on the 4th of May, 1904, a petition to the Supreme Court (in which the plaintiff in the action in which the receiver was appointed and the receiver himself joined), on which an order was made vacating and setting aside the sale of the trade-marks by the receiver and restoring to him the title to the property sold. Thereafter this action was brought to procure a judgment declaring invalid the transfer of the Baker & Berringer notes to Warner & Co., and the assignment of the trade-marks, upon the ground that they were made with intent to hinder, delay, and defraud creditors, and that they constituted an unlawful preference under the statute, and for that reason invalid, and to compel Warner & Co. to account for any and all moneys received by it on account of any indebtedness due from the J. F. Smith & Co. on and after

March 25, 1899. About the same time another action was brought against Woodruff to set aside the transfer of the trade-marks to him for a similar reason, and to compel him to account for all moneys received from the sale of the medicines covered by such trade-marks. Subsequently Ballard was made a party to the action, and the assignment and transfer by Woodruff to him was also sought to be set aside for a similar reason, and to compel him to account. The action against Warner & Co. resulted in a judgment declaring the assignment of the Baker & Berringer notes and the trade-marks to such firm invalid, on the ground that the same were made with intent to hinder, delay, and defraud creditors and constituted an unlawful preference, and directing defendant to account for any and all payments made to Warner & Co. for and on account of any indebtedness due from the J. F. Smith & Co. to said firm on and after March 25, 1899. The judgment further provided that, it having been made to appear on the trial that $4.250 had been paid to such firm, after that day judgment was directed against the defendant in favor of the plaintiff for such sum, together with interest from the date of the respective payments, $1,721.25, making in all $5.971.25. The action against Woodruff and Ballard resulted in a judgment declaring invalid and setting aside the assignment of the trade-marks to each of them, respectively, because made with intent to hinder, delay, and defraud creditors, and directing each of them to reassign such trade-marks and to turn over all property which had come into their possession by reason of them, and also directing each of them to account to the plaintiff for all profits received, either directly or indirectly, in the business of manufacturing and selling the remedies covered by the trade-marks, and enjoining and restraining each of them and their representatives from thereafter using such trade-marks. Each of the defendants has appealed and each has presented a separate record on appeal. The actions were practically tried together, were so argued or submitted on appeal, and the evidence set out in each record is substantially the same. For this reason, it has seemed best in stating the facts necessary to be considered on appeal from the judgment in this action to also state such as may be necessary to be considered on appeal from the judgment in the action against Woodruff and Ballard.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-LAUGHLIN, CLARKE, and SCOTT, JJ.

Albert F. Hagar, for appellant.
Howard H. Williams, for respondent.

McLAUGHLIN, J. The judgment appealed from must be reversed. There is absolutely no evidence to sustain a finding that the assignment of the Baker & Berringer notes or the trade-marks was made for the purpose of hindering, delaying, or defrauding creditors, or that the money paid to the firm of Warner & Co., on the indebtedness of the J. F. Smith & Co. after the 25th of March, 1899, was paid with the intent of giving that firm a preference over other creditors. Warner & Co. had been dealing with the corporation for several years, during the course of which, and on the 25th of March, 1899, it was indebted to the firm in the sum of $2,684.91 for medicines manufactured and sold. The corporation then wanted a further credit. It also wanted to borrow $1,000. The firm gave the additional credit and loaned the money, and to secure the payment of which, and for no other purpose, the Baker & Berringer notes were assigned. There is not a scintilla of evidence to show when this was done, that any officer of the corporation knew, or had reason to believe, the corporation was insolvent or its insolvency then imminent; on the contrary, if the testimony of one of plaintiff's witnesses is to be credited, some

of the officers of the corporation believed its assets at that time were largely in excess of its debts. The Baker & Berringer notes were considered, not only gilt-edge paper, but they also were accompanied by valuable collateral, and the fact that Warner & Co. on the 5th of July, at the request of the corporation, gave these notes and the collateral accompanying them back to it and received in exchange the corporation's own notes, secured simply by the trade-marks, indicates, if evidence indicates anything, that neither of the parties then believed that the corporation was insolvent, or that it would be unable to pay the notes as the same fell due. The fact that it subsequently turned out that the corporation was on the 25th of March, and thereafter continued to be, insolvent, did not in and of itself establish that the assignments of the notes and trade-marks, or the payments made, were for the purpose of giving the preference prohibited by section 48 of the stock corporation law. Laws 1892, p. 1838, c. 688. Something additional had to be proved, viz., that the assignments were given and the payments made by the corporation with the intent of giving a preference. There is not only no evidence to show intent, but all of the evidence bearing upon the transaction negatives it. Intent to prefer is a fact which must not only be alleged, but proved (Curtis v. Leavitt, 15 N. Y. 9); and it must be shown in addition that the assignment was made because insolvency then existed or was in contemplation (Paulding v. Chrome Steel Co., 94 N. Y. 334). Where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed to it which accords with its absence. Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501.

Here the evidence is not only capable of such construction, but any other would be contrary to evidence. After the transactions in March and April, of which the plaintiff complains, Warner & Co., as we have already seen, advanced to the corporation $1,000 in cash, and it did not thereafter receive from the corporation that amount in money, nor anything near like it. The Baker & Berringer notes were given back to the corporation. Therefore their assignment could not, by any possibility, have hindered, delayed, or defrauded creditors, or given the firm a preference. After the assignment of the trade-marks the corporation paid only two of its notes. It is true Woodruff, its assignee, thereafter paid the balance of them, but this is no concern of the plaintiff, so far as the defendant is concerned. If Woodruff, in making such payments, used the proceeds derived from sales of the medicines covered by the trade-marks, and plaintiff as receiver was entitled to the same, then he can look to him, and in this connection it must be borne in mind that he has pursued this course and now has a judgment against Woodruff, requiring him to account for such moneys. The payments made to Warner & Co. were made in the usual course of business, and there was nothing in connection with any of them which indicates they were made in bad faith, or for the purpose of giving that firm a preference over any other creditor of the corporation. Under such circumstances, if the payments made can be recovered by the receiver, then there is no safety in dealing with a corporation, if it should at any time thereafter turn out that at the

time the dealings were had the corporation was insolvent.  Obviously this is not a proper construction of the statute.

The judgment appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event.  All concur.