(118 App. Div. 47)

VAN SLYCK v. WOODRUFF et al.

(Supreme Court, Appellate Division, First Department.   March 8, 1907.)

1. FRAUDULENT CONVEYANCES—ASSIGNMENT—PREFERENCES—EVIDENCE—SUFFI-
CIENCY.

In an action by the receiver of an insolvent corporation, evidence ex-
amined, and *held* insufficient to show that an assignment of property of
the corporation to defendant was made with intent to hinder, delay, or
defraud creditors, or to give him a preference over other creditors.

2. CORPORATIONS—INSOLVENCY.

In an action by the receiver of an insolvent corporation, evidence ex-
amined, and *held* sufficient to show that a purchase by B. of property
which the corporation had sold to B.'s vendor was bona fide, and without
notice of plaintiff's claim.

Appeal from Special Term, New York County.

Action by George F. Van Slyck, as receiver, against Martin C.
Woodruff and another, impleaded with others. From a judgment for
plaintiff, defendants appeal. Reversed and remanded.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRA-
HAM, CLARKE, and SCOTT, JJ.

Albert Francis Hagar, for appellant Woodruff.
John H. Thompson, Jr., for appellant Ballard.
Howard H. Williams, for respondent.

McLAUGHLIN, J.   The facts necessary to be considered on the
question involved in the appeal from the judgment in this action are
stated in the opinion delivered in the case of Van Slyck, Receiver, v.
Warner (decided herewith) 103 N. Y. Supp. 1, and therefore it is
unnecessary to restate them.

As to the judgment against Woodruff, there is absolutely no evi-
dence to sustain the finding that the assignment to him was made with
intent to hinder, delay, or defraud creditors, or to give him a pref-
erence over other creditors; on the contrary, the evidence would seem
to indicate that it was made in good faith, for the sole purpose of en-
abling the corporation to pay its debts.   The real consideration for the
assignment was $5,750; that is, $1,500 in cash, and an agreement
on the part of Woodruff to pay the indebtedness of the corporation
to Warner & Co., $4,250.   The cash was paid at the time the assign-
ment was made, and Warner & Co. was thereafter paid by Woodruff
as the notes of the corporation fell due, either out of his own funds
or the proceeds derived from the sales of the medicines covered by the
trade-marks.   Out of the $1,500 received by the corporation from
Woodruff, it paid the Nassau Advertising Company $500, which is at
least significant, if it does not indicate that there was no intent on the
part of the officers of the corporation by the assignment to hinder,
delay, or defraud creditors or to prefer one over another.

But it is said the consideration paid by Woodruff was inadequate,
that the trade-marks were worth at the time the assignment was made
to him at least $20,000, and in this connection attention is called to the
fact that four or five years afterwards Woodruff succeeded in selling
the trade-marks to Ballard for $10,500.   The profits of the corpora-

tion had never been large. The year preceding the sale to Woodruff the evidence indicates the net losses aggregated upwards of $13,000, and for six years immediately preceding such sale the losses averaged nearly $2,000 a year. But a much more significant fact bearing upon the question of value is that the trade-marks were sold by the receiver at public auction (due and timely notice having been given of the sale) for $100; that they were bid off by Williams, who is counsel for the receiver on this appeal, and who then represented the principal creditor of the insolvent corporation—the Nassau Advertising Company. If the consideration paid by Woodruff were inadequate, what shall be said of the sale made to Williams? And how can he, the Nassau Advertising Company, the J. F. Smith & Co., Incorporated 1901, or the receiver in this action justify their respective acts in permitting such sale to be made? That was considered a proper sale, and no one thought of questioning it until the J. F. Smith & Co., Incorporated 1901, failed in its action brought against Woodruff. Then, for the first time, it seems to have dawned upon some one that the consideration paid by Woodruff was inadequate. Transactions of this character ought not, and rarely do, receive the sanction of the court, and for the obvious reason that in an equitable action of this kind the person who asks equity must not only do equity, but must come into court with clean hands. If the trade-marks at the time of their assignment to Woodruff were, ever since have been, and now are of the value of $20,000, then the receiver's sale, made at the instance of a favored creditor, of the same trade-marks for $100, was a gross fraud upon the corporation and its creditors. But the trade-marks had no such value. The evidence indicates that Woodruff paid all, if not more than, the same were worth, if the proceeds derived from the sales in the past were any indication as to what they would be in the future.

As to the judgment against Ballard, that also is without merit. The fact is not disputed that he paid Woodruff $10,500 in cash, but it is urged he took the assignment from Woodruff with notice of plaintiff's claim. Having reached the conclusion that the assignment to Woodruff is good, it necessarily follows that the assignment from him to Ballard, is good. However, it may not be out of place to call attention to the fact that there is no evidence that Ballard had notice of any claim by the receiver until after he had made the purchase. Before Ballard purchased he made a thorough investigation of Woodruff's title; the records of the Patent Office at Washington were examined; counsel was consulted with reference to the claim of J. F. Smith & Co., Incorporated 1901; Warner & Co., who had made the assignments to Woodruff, was interviewed; and other steps taken for the purpose of ascertaining whether the title which Woodruff had was good, or whether any one else had any claims against the trade-marks, and, as a result of his investigation, he ascertained that the trade-marks were sold to Woodruff on the 28th of September, 1899, more than a year before the receiver was appointed, and that for upwards of four years the receiver had not questioned his title. He also ascertained that the trade-marks had been sold by the receiver

at public auction, and thereafter whatever title was acquired by the purchaser was assigned to the J. F. Smith & Co., Incorporated 1901, which had brought an action against Woodruff to restrain his using such trade-marks and the trial of that action had resulted in Woodruff's favor, enjoining the corporation from using them.

These, and the other facts developed at the trial, establish that Ballard acted in good faith, and that the title acquired by him is good.

It follows, therefore, that the judgments against Woodruff and Ballard are reversed, and a new trial ordered, with costs to appellants to abide event. All concur.

<hr />

