That was not the inevitable result of the fall, but was due to intermediate, unnecessary, and remote causes, which at best are speculative and conjectural. While the result of the accident may involve hardship to the plaintiff, yet the city on no declared principle of law can be held responsible.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs. FITZGERALD, J., concurs in result.

(54 Misc. 557)

### FOREMAN v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. June 10, 1907.)

NEW TRIAL—VERDICT CONTRARY TO EVIDENCE—CREDIBILITY OF WITNESS.

   Plaintiff's case depending on the fact that the car came to a full stop before he attempted to alight, and that while he was doing so it suddenly jerked forward, and it not appearing that any one saw him when he alighted, and there being discrepancies in the testimony and contradictions on circumstantial points warranting the jury in doubting his testimony, the court could not set aside the verdict for defendant and grant a new trial on the ground that the verdict was contrary to the evidence; the credibility of plaintiff being for the jury.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, § 141.]

   Fitzgerald, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Max Foreman against the New York City Railway Company. From an order setting aside a verdict for defendant, and granting plaintiff a new trial, defendant appeals. Reversed, and verdict reinstated.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

Anthony J. Ernest (H. A. Robinson and Bayard H. Ames, of counsel), for appellant.

Greenthal & Greenthal, for respondent.

GOFF, J. In substance the learned trial justice charged the jury that the plaintiff was the only witness that testified to the cause of the accident; that the burden of proof rested upon him to establish by a fair preponderance of credible evidence, "such evidence as carried conviction to their minds" that the accident occurred solely through the negligence of the defendant, and not through any negligence of his own; that, if they believed the car was moving when plaintiff got off, the verdict must be for the defendant; that, if they did not believe the evidence as to the way in which the accident occurred, the verdict must be for the defendant; that the plaintiff was an interested witness; that they should take into consideration the interest of any witness, the appearance, the manner, and the probability of the story told by such witness; and that, if they believed that any witness had willfully sworn falsely to any material fact, they were at liberty to

disregard the entire evidence of such witness. The jury rendered a verdict for the defendant.

There is not a single exception on the part of the plaintiff, either to the case as presented or to the charge as delivered, and it therefore must be assumed that all the questions submitted were submitted under the most favorable conditions which the evidence permitted. But one question is presented on this appeal: Did the learned trial justice commit error in setting aside the verdict for the defendant? In the order the only ground assigned is "that the verdict is contrary to the evidence." There is not the slightest suggestion that the jury were mistaken, or misled, or confused, or prejudiced, or corrupted, or influenced by any cause or element except by the evidence before them; and the line of authorities on setting aside the verdict of a jury on any of those grounds or for excessive damages is not applicable. The crucial question is: Was the jury at liberty to disbelieve the testimony of the plaintiff? If they were so at liberty, and did so disbelieve it, nothing remained but to render a verdict against him, for the plain reason that, unless they believed him, they could not render a verdict in his favor. He was the only witness that testified to the actual occurrence. While his wife and sister-in-law may be said to have corroborated him to some extent as to his being dragged by the car and thrown to the street, they did not testify as to his actual stepping from the car; for they were inside the car and were proceeding to a further destination, when he left them and went upon the platform to alight at Thirty-First street. Upon his own unaided, uncorroborated testimony, therefore, rests the burden of proving that he did not step from the car while it was in motion, that the car had come to a full stop before he attempted to alight, and that in doing so the car suddenly "jerked" forward throwing him to the street. It does not appear that any person saw him stepping from the car, and it cannot be urged that his testimony was susceptible of contradiction, and, on failure to contradict, it should have been accepted as true. Therefore, from the very nature of the case, the jury were compelled to analyze his testimony, and judge whether it was inherently improbable, and whether interest and motive had given it shape. This is what they were sworn to do, this is what they were instructed to do, this is what they did do, and for doing it their verdict was set aside.

Upon the plaintiff's credibility rested his whole case, and if he was unworthy of credence he should fail. Who was the judge of this credibility? Not the justice who presided, but the jury who decided. If the justice had charged that the plaintiff was entitled to credence and that the jury were bound to accept his testimony as true, it would have been error—a usurpation by the justice of the function of the jury. When the verdict was set aside, was it not in effect a judicial declaration that the jury had committed error in refusing to believe the plaintiff? There is neither peremptory rule of law nor governing authority which in a case of this character, resting solely upon the unsupported and uncorroborated testimony of an interested witness, requires a jury to blindly accept and be bound by such testimony, even though in terms it be not contradicted. If such were the rule, trial

by jury would be an idle ceremony, and the correct instructions given in this case would be a fiction. The exercise of judgment in ascertaining truth or detecting falsehood is not confined to the mere spoken word. Belief or disbelief may be produced by the conduct, the manner, the demeanor, the impalpable atmosphere created by the witness, which cannot be described in language, but which may be felt by the hearer. It may be said that the trial justice in this case had equal opportunities with the jury to hear and observe and judge of the plaintiff's credibility. That is true, and in all probability, because of his training and experience, better qualified to judge; but the law does not vest him with that power. The jury is the tribunal that has the power, and unless it is abused the law will not interfere, because its rightful use is the law. An examination of this case fails to show that there was a wrongful use of this power. There were discrepancies in the testimony of the witnesses and contradictions on circumstantial points sufficient to warrant the jury in doubting, if not disbelieving, the testimony of the plaintiff. And here be it observed that it was sufficient if the jury doubted the truth of his statement. It was not necessary that they should actually disbelieve it. Unless they were convinced of its truth, and that by a preponderance of all the testimony, they could not say that he had successfully borne the burden of proof.

The views here expressed are not in conflict with Robinson v. Interurban St. Ry. Co., 113 App. Div. 46, 98 N. Y. Supp. 918, relied upon by the respondent. The rule there laid down by the learned presiding justice undoubtedly expressed the law; but excerpts from an opinion, however unassailable of themselves, do not establish an inflexible rule of general application, unless the facts under inquiry warrant the application. Indeed, there is a striking similarity between the facts in the case cited and those of the one at bar, with a difference in results. There the plaintiff on her uncorroborated testimony recovered a verdict, and the trial judge set it aside as against the weight of evidence. Here the plaintiff on his uncorroborated testimony lost the verdict, and the justice set it aside as contrary to the evidence. The ruling of the Appellate Division is best expressed in its own words:

"* * * In the case at bar the question of whether the plaintiff sustained the burden of proof by establishing the two elements of negligence and freedom from contributory negligence by a fair preponderance of evidence was, as we have endeavored to point out, free from doubt. The learned trial judge having, after consideration, resolved the question of the weight of evidence adversely to the plaintiff, we are unable to say that he erred or exceeded the discretion which was vested in him in ordering a new trial."

There was another element in the case which, while not absolutely controlling, the court deemed of sufficient importance to advert to in the following language:

"The jury concluded to accept her version of the accident, and that they were greatly prejudiced against the defendant because of the effort made to exaggerate her failings and associations, bad as they were, is shown, we think, by the size of the verdict."

Plainly, therefore, this case is an authority that, because the uncorroborated testimony of the plaintiff did not establish the required preponderance, the verdict in her favor was contrary to the evidence and was properly set aside. Applying this authority to the case at bar, it follows by parity of reasoning that, because the uncorroborated testimony of the plaintiff did not establish the required preponderance, the jury declared against him, and their verdict should not have been set aside. These two cases—the Robinson and the one at bar—are illustrative of the distinction in a negligence case between a verdict for the plaintiff and a verdict for the defendant, and this distinction was clearly pointed out in Jarchover v. Dry Dock R. R. Co., 54 App. Div. 238, 66 N. Y. Supp. 575. While it is a rule of general application that the testimony of an unimpeached witness, which is probable, uncontradicted by direct evidence or by legitimate inferences, not surprising, and not suspicious, cannot be arbitrarily disregarded, yet there are well-defined exceptions to this general rule. People v. Evans, 40 N. Y. 1; Kavanagh v. Wilson, 70 Id. 177; Koehler v. Adler, 78 Id. 287; Wohlfahrt v. Beckert, 92 N. Y. 490, 40 Am. Rep. 406; Munoz v. Wilson, 111 N. Y. 300, 18 N. E. 855; Gulliver v. Blauvelt, 14 App. Div. 523, 43 N. Y. Supp. 935; Kennedy v. McAllaster, 31 App. Div. 458, 52 N. Y. Supp. 551. And, commenting upon them, the United States Supreme Court, in Sonnentheil v. Christian Moerlein Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492, said:

"While the jury has no right to arbitrarily disregard the positive testimony of unimpeached and uncontradicted witnesses, the very courts (New York) that lay down this rule qualify it by saying the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."

The record in this case fails to show that the plaintiff satisfactorily proved by a preponderance of evidence the two essentials necessary to a recovery—his freedom from and the sole negligence of the defendant; and, the case resting upon his testimony alone, his credibility as an interested party became the vital question. The decision of that question belonged exclusively to the jury, and an interference with it by the trial justice was an erroneous exercise of power.

The order should be reversed, and the verdict reinstated, with costs.

GILDERSLEEVE, P. J., concurs in result. FITZGERALD, J., dissents.