(170 App. Div. 352)

WILLS v. VENUS SILK GLOVE MFG. CO., Inc., et al.

(Supreme Court, Appellate Division, Second Department.  December 10, 1915.)

1. BANKRUPTCY ⬦166—PREFERENCES—INTENT.

To invalidate a corporate mortgage given to secure certain creditors within four months before bankruptcy, it is not enough that the transfer and the insolvency coexisted, but it must appear that the act was done in view or in forecast of insolvency, and that the motive impelling the action was a preference, and not an honest, though misguided, effort to save the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258;  Dec. Dig. ⬦166.]

2. BANKRUPTCY ⬦303—PREFERENCES—EVIDENCE.

The intent to prefer, necessary to invalidate a transfer made within four months before bankruptcy, must be proved by direct evidence, or inferred as the necessary consequence of other facts clearly proved.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⬦303.]

3. BANKRUPTCY ⬦303—PREFERENCES—EVIDENCE.

In an action to foreclose a corporate mortgage, given within four months before bankruptcy, while the corporation was insolvent, but while it was still a going concern, evidence *held* to support a finding that it was not made, and the bonds secured thereby were not delivered or accepted by creditors, with intent to give a preference to them over other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⬦303.]

4. BANKRUPTCY ⬦303—PREFERENCES—EVIDENCE.

In an action to foreclose a mortgage given by a corporation within four months before bankruptcy, while insolvent, the exclusion of evidence that after the giving of the mortgage the president of the corporation in writing and verbally said there was no incumbrance of any kind, but that there were additional assets of $42,000, which was not the fact, offered as tending to show an intent to give a preference, was not error requiring a reversal, as it was too vague and indefinite.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⬦303.]

5. TRIAL ⬦45—RECEPTION OF EVIDENCE—OFFER OF PROOF.

The proper practice is to call a proposed witness and interrogate him, instead of making an offer of proof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 110–114;  Dec. Dig. ⬦45.]

6. APPEAL AND ERROR ⬦260—RESERVATION OF GROUNDS OF REVIEW—OFFER OF PROOF.

Where an offer of proof received the sanction of the court, and the opposing counsel was silent, an exception to the exclusion of the offered evidence might be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1503–1515;  Dec. Dig. ⬦260.]

7. APPEAL AND ERROR ⬦837—RESERVATION OF GROUNDS OF REVIEW—OFFER OF PROOF.

In reviewing an adverse ruling on an offer of proof, the court is limited to the specific testimony which the counsel attempted to bring out, and other possible testimony, which counsel neither attempted to offer nor indicated, cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289;  Dec. Dig. ⬦837.]

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, Kings County.

Action by Louis C. Wills against the Venus Silk Glove Manufacturing Company and others. From a judgment in favor of plaintiff, defendant Archibald Palmer, as trustee in bankruptcy, appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Archibald Palmer, of New York City, for the appellant.
Fred L. Gross, of Brooklyn, for the respondent.

JENKS, P. J. [1, 2] On May 1 and 2, 1914, the defendant corporation executed a mortgage to the plaintiff trustee for five years to secure 25 bonds, of $1,000 each. Three months later a petition of involuntary bankruptcy was filed against the defendant corporation, and in due course it was adjudged a bankrupt. The foreclosure was authorized in case of an adjudication in bankruptcy. The Special Term found that insolvency was imminent at the time the corporate mortgage was made, but that neither it was made nor the bonds under it were delivered or accepted "with the intent of giving a preference to any particular creditor over other creditors" of said company. The defendant trustee in bankruptcy attacks the latter finding. It is not enough that the act complained of and the insolvency coexisted. Paulding v. Chrome Steel Co., 94 N. Y. 334; Van Slyck v. Warner, 118 App. Div. 40, 103 N. Y. Supp. 1. It must appear that the act was done in view or in forecast of insolvency. Id. In Swan v. Stiles, 94 App. Div. 117, 122, 87 N. Y. Supp. 1089, 1092, Spring, J., for the court, says:

"The test is: May we fairly conclude a preference was the motive impelling the action of the directors, or was it an honest, though misguided, effort to save the corporation?"

See, also, Converse v. Sharpe, 161 N. Y. 571, 56 N. E. 69; Gordon v. Southgate Building Co., 109 App. Div. 838, 96 N. Y. Supp. 717. The intent to prefer is a fact that must be proved "by direct evidence, or inferred as the necessary consequence of other facts clearly proved." Curtis v. Leavitt, 15 N. Y. 9, 198, cited in Van Slyck v. Warner, supra.

[3] The issue of the bonds was confined to the Schomakers, father and son, and the Doull-Miller Company. They were creditors of the corporation for $2,000, $10,000, and $3,500, respectively. The debts of the Schomakers were represented by unsecured corporate notes, one on demand and the other due on May 19, 1914. Accordingly the Schomakers received 2 and 10 bonds, respectively, for their notes, and the Doull-Miller Company received the remainder to secure their said debt and future advances to the corporation. Soon thereafter the said Doull-Miller Company advanced $6,500. The purpose and the intent of these parties should be resolved by consideration of their self-interests. The scheme of the mortgage was a legitimate and common financial expedient. If it succeeded, so that the corporation lived and prospered, then the capital stock might represent a sound investment, and not become practically worthless as of a defunct corporation. The

Schomakers and their relative, Probst, had each invested $5,000 in the stock.

Again, the corporation was the tenant of the elder Schomaker and had paid its rent regularly. Naturally the Schomakers would wish to save it as a going concern. There is nothing suspicious in the consent to postpone these debts for five years, or to fund them, so to speak, if we consider that the corporation could not meet them when due and that postponement gave promise of ultimate payment. Doubtless the Schomakers were also influenced by the desire to facilitate the release of the younger Schomaker from his open guaranty in favor of the corporation to the Doull-Miller Company, under the advice of their relative, Probst, that it was "a very bad thing for a young man to do." And the mortgage, or such similar expedient, may well have seemed necessary to maintain the connection between the corporation and the Doull-Miller Company, which insisted upon some security in place of the guaranty and as a condition for the continuance of their relations with the corporation; for the Doull-Miller Company had been the factor and the financier of this corporation and its predecessor for three years. There are indications that the continuance of such relations were most desirable, if not essential, for large payments of legitimate commissions had theretofore been received by the Doull-Miller Company. The business had been carried on for several years in Pennsylvania; this New York corporation was young, and was working; the said investment of the Schomakers and Probst in the capital stock had been made but two months before the mortgage; they had been furnished with an accountant's report of November, 1913, and a statement from the corporation, after they had inspected the plant and the merchandise, had seen the plant working day and night with double shifts, had sent their bookkeeper to look into the books and merchandise, and one of their number had visited the plant in Pennsylvania.

The loans represented by the notes were made by the Schomakers to meet the payrolls, and the money was needed because the corporation was short of funds temporarily as the result of trouble in the dye house and the shut-out of the women operatives in Pennsylvania by the heavy storms. According to the testimony of the Schomakers and of the representative of the Doull-Miller Company, everything seemed promising. Wunsch had assured the Schomakers that the machinery was paid for and had exhibited the receipted bills, and a little later had told of orders on hand to the extent of $80,000 and spoken of profits of 25 per cent. So far as the Doull-Miller corporation is concerned, there is a cogent indication of its faith from the fact that subsequent to the bond issue it paid out on accepted drafts of the corporation $17,000 without security, and for which it has received no reimbursement. It does not appear that either of the Schomakers had any knowledge of the kind of business done by the corporation, or indeed took any part therein. They knew in a general way the situation, the press for funds; but it was natural enough that they should strive to save the corporation, with the hope that the tide would turn. In determination of the intent, the rule of Lopez v.

Campbell, 163 N. Y. 340, 57 N. E. 501, should be observed, where the court, speaking of the proof of such an intent as is considered in this case when established by circumstantial evidence, say:

"Where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed to it which accords with its absence."

I think this mortgage, then, falls within the category of corporation proceedings discussed and approved in Sanford Tool Co. v. Howe, Brown & Co., 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713:

"Nor is it the case of the directors of a corporation in fact insolvent, though continuing and expecting to continue in business, executing a mortgage on the property of the corporation to simply secure themselves for a past indebtedness; for here the corporation, although insolvent within the rule which declares that insolvency exists when a debtor has not property sufficient to pay his debts, was still a going concern and intending to continue its business, and the mortgage was executed, not simply to secure directors and stockholders for past indebtedness, but to induce them to procure a renewal or extension of paper of the company then maturing or about to mature, and also to obtain further advances of credit."

In the case at bar the corporation continued its activities from the time the mortgage was made down to the very day, some three months thereafter, when the petition of involuntary bankruptcy practically wound it up. Up to January or February of 1914 the corporation had paid the Doull-Miller Company $24,000. Wunsch testifies that between May and September the corporation suffered losses, that defects in its looms required it to reduce the price of goods 30 per cent., that in the period intervening May and September the amount of the manufactures was $40,000, and that investigation made after the works were closed down showed that the weaving department lost $100 a day by imperfections. He also testifies that on account of the depreciation of the price of raw silk to the extent of $1 a pound the corporation suffered losses on $10,000 worth of stock on hand.

[4] When the motion for dismissal was made, the learned court thought that there was "a very serious question" as to whether the evidence, ruled out, "of their conduct after the 1st day of May, was not relevant upon the issue as to whether or not they did not all appreciate the fact that this corporation was going into insolvency, and that they wanted to postpone that day as long as possible, so as to save this from the operation of the Bankruptcy Law, but it was so remote that I excluded the evidence." And the court said further:

"If there has been any error committed on the trial, it has been in the exclusion of that evidence, because there is good reason for saying that it is relevant evidence on the question of their appreciation of that fact. But as it happened after the mortgage was made, and as the bondholders were not parties to what was done there, I excluded it—that is the reason I excluded it."

Our attention is called to the particular instance relied on by the learned counsel for the appellant. The record is as follows: After the counsel of the trustee in bankruptcy had called "another witness to the stand, who is not sworn," the counsel said:

"I want to show that after May 1st this president of the company, the sole manager, the big manager, of the company, continued to keep from the creditors information regarding what they had done on May 1st, a thing which nobody had any knowledge of, by giving a statement in writing and saying verbally that there was nothing of record against the concern and there was no incumbrance of any kind, but, on the contrary, showing additional assets of $42,000, which are directly in contradiction of the fact.

"The Court: Do you object to all this evidence as irrelevant?

Counsel for the defendant then said:

"Yes; I object as irrelevant.

"The Court: Objection sustained.    (Exception.)"

It is to be noted that the objection of irrelevancy is suggested by the court. If the learned court had any serious doubt upon the subject, I think it might well have followed the rule that a court of equity should take proof as to which it has any question; for it can exclude it in consideration of its decision.

[5-7] And the proper practice is to call any proposed witness and to interrogate him, instead of making an offer of proof. So far as this particular item of evidence referred to by counsel is concerned, the offer received the sanction of court and the silence of adversary, and therefore the exception may be reviewed. Gerard v. Cowperthwait, 2 Misc. Rep. 371, 21 N. Y. Supp. 1092. But upon such review our consideration, of course, must be limited to the specific bit of testimony which the counsel attempted to bring out, and not in view of other possible testimony which the counsel did not either attempt to offer or to indicate. If the court had received this bit of evidence and given it full credence, I cannot say that the court's present finding as to intent was unjustified; for all that appears is that in some statement made by Wunsch, the president of the corporation, to some inquirer, in writing and verbally, it was said that there was nothing of record against the concern, there was no incumbrance of any kind, but, on the contrary, that there were additional assets of $42,000, which was not the fact. This is altogether too vague and too indefinite to disturb the judgment. The ruling complained of, being in an equity case, must affect substantially that judgment. Mayne v. Nassau Electric Railroad Co., 151 App. Div. 75, 136 N. Y. Supp. 375, and cases cited.

I advise that the judgment be affirmed, with costs. All concur.