MUNZINGER v. UNITED PRESS et al.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—CORPORATIONS—TRANSFER OF
    PROPERTY TO DIRECTORS.
        Stock Corporation Law, § 48, provides that no corporation which shall
    have refused to pay any of its notes or other obligations may transfer
    property to its officers, directors, or stockholders for other than an ade-
    quate cash consideration. The sole indebtedness of defendant company
    was for certain services furnished by a telegraph company under a con-
    tract providing for a fixed rental, and also compensation according to serv-
    ices rendered. Held, that such indebtedness was not an obligation within
    the statute, and hence an assignment made by the company to a director
    for the benefit of creditors was valid.
2. SAME.
        An assignment of all its property by a corporation to a director, with no
    preferences except labor claims, is not prohibited by Stock Corporation

Law, § 48, which provides that an insolvent corporation may not transfer any of its property to an officer, director, or stockholder for any other than an adequate cash consideration.

Appeal from special term, New York county.

Action by Louis Munzinger against the United Press and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Benjamin Patterson, for appellant.

William C. Davis, for respondents.

RUMSEY, J.  Before the 29th of March, 1897, Munzinger had pending in the supreme court an action against the United Press for libel, in which he recovered judgment on the 19th of April, 1897. Execution was issued and returned unsatisfied on that judgment. On the 29th of March, 1897, the United Press, being insolvent, made an assignment to the defendant Mason, one of its directors, for the benefit of its creditors, without any preference except for labor. Munzinger brought this action to set aside this assignment as fraudulent against his judgment. Upon the trial his complaint was dismissed, and from the judgment entered upon that dismissal this appeal is taken.

Munzinger's action for libel was pending when this assignment was made, and when he afterwards recovered a judgment in it he thereby became a creditor of the United Press to the extent, at least, that he could bring an action to set aside the assignment on the ground of fraud. Jackson v. Myers, 18 Johns. 425; Munson v. Brass Works, 37 App. Div. 203, 56 N. Y. Supp. 139. He attacks the assignment upon the ground that it is illegal because it was made to Mason, a director of the company, in violation of section 48 of the stock corporation law (2 Rev. St. [9th Ed.] p. 1022). This section provides that no corporation which shall have refused to pay any of its notes or other obligations when due in the lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors, or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. The United Press had no notes outstanding at the time this assignment was made, nor does it appear that it ever had any. But it does appear that it had entered into contracts with the Western Union Telegraph Company from time to time, by which it had leased certain wires, and hired from the telegraph company certain services, for which it had agreed to pay certain rentals, to be paid in monthly installments; and it had also agreed by those contracts to pay for certain other services, if any such were received by the United Press, at a rate fixed in the contracts. It appeared that the Western Union Company had presented bills for these rentals and other services to the United Press from time to time, and that on the 29th of March, 1897, there was due to the telegraph company from the United Press about $96,000 upon these bills which had been presented. The first question raised by this case is whether those accounts, based as they were upon written agreements fixing the rate of payment for certain services, were

obligations within the meaning of section 48, above quoted. Before the stock corporation law was passed, there had been contained in the Revised Statutes a statute of like nature, by which it was provided that whenever any incorporated company should have refused payment of any of its notes or other evidences of debt, it should not be lawful for such company or any of its officers to assign any property of the company to any of its officers, directors, or stockholders, directly or indirectly, for the payment of any debt. 1 Rev. St. p. 603, § 4. That continued to be the reading of the statute in that regard until the stock corporation law was passed in 1890, and assumed its present form in 1892. The two statutory provisions were undoubtedly intended to meet the same evil, and it is a well-settled rule with respect to statutory amendments that a revision does not work a change in the meaning simply because the phraseology has been changed, or unless there is such a difference as to indicate a plain intention to establish a different rule. Davis v. Davis, 75 N. Y. 221; May v. Bermel, 20 App. Div. 53, 46 N. Y. Supp. 622. Under the Revised Statutes there is no doubt that an open account was not an evidence of debt. Does the revision in which the word "obligation" is substituted for the expression "evidences of debt" give to section 48 any different or extended meaning than was borne by the Revised Statutes? The word "obligation" originally meant a bond containing a penalty, with a condition for the payment of money, or to do or suffer some act or thing. Co. Litt. 172a. The meaning of the word, however, has gradually been enlarged by the courts, and it has ceased to be restricted to a bond or writing obligatory, and has been extended to mean a paper by which some fixed duty is assumed to be performed at a certain time, or an instrument in writing whereby one party contracts with another for the payment of money at a fixed date, or for the delivery of specific articles. But, however various have been the definitions given to the word, the one essential element has always been that it must be a written paper, the duty assumed by which must be a fixed duty. Bouv. Dict. tit. "Obligation"; Sinton v. Carter Co. (C. C.) 23 Fed. 535; 17 Am. & Eng. Enc. Law, pp. 2, 3; Basehore v. Rhodes, 85 Pa. St. 44–46; Strong v. Wheaton, 38 Barb. 616–624; State v. Campbell, 103 N. C. 344–347, 9 S. E. 410. While the amount of certain of the payments to the Western Union Telegraph Company might have been ascertained by an examination of the terms of the contracts providing for monthly payments, yet in respect of the services to be rendered by the company it was not practical to ascertain either the amounts or the times of payment by reference to the contracts. Each of these things depended upon the extent of the services rendered, and the time of their rendition. The amount due to the Western Union Telegraph Company at any given time could only be ascertained by an examination of its books and by the bills presented. There can be no doubt, it seems to me, that these running accounts of that company did not constitute any obligation within the meaning of section 48, and therefore the plaintiff cannot stand upon the ground that the transfer to Mason was void because the company had refused to pay its notes or obligations. This transfer was an assignment for the benefit of the creditors of the

company without preferences, and as such was permissible, under section 48. Croll v. Knitting Co., 17 App. Div. 282, 45 N. Y. Supp. 680. The assignment would have been valid even if the company had been insolvent, and had failed to pay its notes or other obligations; for, even under those circumstances, I do not think that an assignment for the benefit of creditors to a director is forbidden by section 48. The evil to be obviated by that section was the giving of a preference by an insolvent corporation to its officers, directors, and stockholders who should become aware of the insolvency before that fact could become known to the general public. It was feared that in such a case they would be likely to devote the property of the corporation to the payment of their own debts, and thereby leave nothing for the other creditors who did not know of its condition. The transfer of any of its property to any officer, director, or stockholder, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash, was prohibited, because such a transfer by an insolvent corporation would permit the transferee to receive the property of the corporation for his debt, and thereby obtain a preference over the other creditors. But beyond that there was no reason for the prohibition. Many reasons can be seen why, because of his acquaintance and knowledge with the affairs of the company, it might be more desirable to make an assignment to a director or officer than to any one else; and certainly such a transfer could work no injury to the corporation nor to any of its creditors. The duty of an assignee is imposed upon him by the statute and by the assignment; and there can be no presumption that one who is a stockholder or an officer would not be just as careful in the performance of those duties to protect the rights of a creditor as any one else. The statute has, I think, a sufficiently broad construction when it is held to forbid the transfer to any officer, director, or stockholder of the property of the corporation under the circumstances enumerated in the statute by way of giving him a preference of his debt; and not to forbid a transfer when its object is an assignment for the benefit of the creditors, and to surrender all its property in payment of all its debts. The question whether such an assignment was valid was considered in the case of Linderman v. Paper Co., 38 App. Div. 488, 56 N. Y. Supp. 456. Although the conclusion reached by the special term in that case is not precisely in point, yet its reasoning is perfectly satisfactory; and we concur in holding, as was held by the special term, that such an assignment is not invalid. For this reason, also, the conclusion of the court below was correct, and the judgment should be affirmed, with costs. All concur; INGRAHAM, J., on first ground.