## CARDOZO v. BROOKLYN TRUST CO.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 31.

**1. BANKRUPTCY �köm282—CORPORATIONS—ACTION BY TRUSTEE TO RECOVER PREFERENCE.**

The trustee for a bankrupt corporation may maintain an action, under section 66 of the New York Stock Corporation Law (Consol. Laws, c. 59), against a trustee under a will to recover payments made when insolvent and with intent to prefer the creditor paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 426; Dec. Dig. ⊫═282.]

**2. BANKRUPTCY ⊫═303—CORPORATIONS—PREFERENCES TO CREDITORS—CON-STRUCTION OF STATUTE—"WITH INTENT OF GIVING A PREFERENCE."**

Under such statute, in order to constitute a payment one "with intent of giving a preference," the payor must have known or expected it to have that effect, and the fact alone that a corporation was insolvent when it made payments to certain creditors is not sufficient to prove an intent to give a preference to such creditors; but where, in addition, it had disposed of practically all of its live assets and discontinued its business, such an intent may be fairly inferred.

[Ed. Note.—For other cases see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⊫═303.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by D. Henry Cardozo, Jr., trustee in bankruptcy of A. W. Blanchard, Incorporated, against the Brooklyn Trust Company, trustee under a will for John and Howard Gibb. Decree for complainant, and defendant appeals. Affirmed.

The following is the opinion of Veeder, District Judge, in the court below:

[1] In this suit the trustee in bankruptcy of A. W. Blanchard, Incorporated, seeks to recover from the defendant, as trustee of the estates of John and Howard Gibb, a payment made in alleged violation of section 66 of the New York Stock Corporation Law. I see no reason why the complainant should not maintain this suit under the state statute. The evidence leaves no doubt in my mind, moreover, that A. W. Blanchard, Incorporated, "was insolvent, or its insolvency was imminent," within the terms of the statute, at the time of the transaction in question. It is equally plain that the trust company was not "a purchaser for a valuable consideration without notice," within the exception of the statute.

[2] The remaining issue is whether the transaction in question was "with the intent of giving a preference to any particular creditor over other creditors of the corporation." The statute refers to the intent of the debtor, without regard to the creditor's intent or to his knowledge of the insolvency of the debtor. Wright v. Gansevoort Bank, 118 App. Div. 281, 103 N. Y. Supp. 548; Wright v. Williams Skinner Mfg. Co., 162 Fed. 315, 89 C. C. A. 23; Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880; Munson v. Genesee Iron & Brass Works, 37 App. Div. 203, 56 N. Y. Supp. 139; Kingsley v. First National Bank, 31 Hun, 335. But this intent to prefer is essential. Dill & Collins v. Morison, 159 App. Div. 583, 144 N. Y. Supp. 894. The statute so provides. The mere fact, therefore, that a corporation is shown to be unable to pay all its debts, does not necessarily render a payment or transfer by it in the

⊫═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

usual course of business ineffectual or require it to suspend. Keiley v. Mechanics' & Traders' Bank, 15 N. Y. Supp. 173.

What, then, is the meaning of "intent to prefer" as used in the statute? In the sense that a person is said to intend the natural consequences of his acts, it may be argued that any payment to one creditor at a time when a corporation is unable to pay all creditors manifests an intention to prefer the creditor who is actually paid. But this is obviously not the meaning of the statutory requirement of an intent to prefer in addition to insolvency, for such a construction would render the required intent superfluous and virtually eliminate it from the statute. It seems to me that the true meaning is that, to constitute a preference, the corporation or its officers making a payment must have known or expected that it would have that effect. Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880. The statute is meant to apply when the corporation is confronted with the problem: How are the assets of the corporation to be used, not in carrying on its business, but in meeting its obligations. Olney v. Baird, 7 App. Div. 95, 110, 40 N. Y. Supp. 202. In other words, the question is whether the payment was made in contemplation of insolvency and winding-up as an impending fact, or in contemplation of continuing business in good faith. And this question must be determined, of course, as an inference from the surrounding facts. The statute is undoubtedly drastic, but the state courts have shown no disposition to construe it narrowly. Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Munson v. Genesee Iron & Brass Works, 37 App. Div. 203, 56 N. Y. Supp. 139.

When the Blanchard Company sublet to Stringer, and sold to him its machinery, tools, and furniture, it parted with all its live assets, and stripped itself of the capacity for carrying on a garage business. Realizing on this transaction only $500 in cash, Blanchard rented an office at his former place of business in Liberty street, and sought (apparently without success) to conduct, not a garage, but an automobile sales agency, and it is not entirely clear whether this was his own business or the company's business. He took with him from the Flatbush avenue garage three old automobiles of little or no value (to only one of which he had title), various automobile sundries and supplies, the cost price of which was $3,000, and book accounts, aggregating "between $10,000 and $15,000." Before the sundries and supplies were removed, Stringer bought for $400 all, it is a fair inference, that were of any real value. The remainder were stored at Liberty street, and there is no proof that anything was ever realized upon them. Blanchard's estimate that 90 per cent. of the book accounts were good and collectible is preposterous, in view of the situation. The company had been in dire financial straits for four months, and it is fair to infer that every possible effort had been made to realize upon outstanding accounts. There is no proof of what, if any, amount has ever been collected. If may be said, therefore, with substantial accuracy, that this transaction stripped the company of all its assets. In view of the further fact that the business in which it had been engaged was then and there actually discontinued, I am of opinion that the payment to the defendant was made in contemplation of insolvency and with intent to prefer, it over other creditors, although the final collapse was avoided for some nine months thereafter.

Decree for complainant.

Cullen & Dykman and F. L. Durk, all of Brooklyn, N. Y., for appellant.

Leonard H. Davidow, of New York City (George Edwin Joseph and Leonard H. Davidow, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. A majority of the court affirm the decree upon the opinion of Judge Veeder.