KARASIK et al. v. PEOPLE'S TRUST CO.

In re FRANKLIN BREWING CO.

(District Court, E. D. New York. December 28, 1917.)

No. 360.

1. CORPORATIONS ⬥477(2)—MORTGAGES—VALIDITY.

In a suit by the trustees of a bankrupt corporation to set aside a mortgage, on the ground that it was never formally authorized by the board of directors as required by General Corporation Law N. Y. § 34, held, the directors, as stockholders, having assented to the mortgage, and it being part of a reorganization scheme, etc., the mortgage was not invalid on that ground.

2. CORPORATIONS ⬥477(6)—MORTGAGES—CONSENT OF STOCKHOLDERS.

Where it abundantly appeared that all of the stockholders of a corporation assented to a mortgage the mortgage is not invalid because no certificate of consent of stockholders was taken and filed in accordance with Stock Corporation Law N. Y. § 6; the consent of the stockholders being the essential and all-important thing.

3. CORPORATIONS ⬥477(6)—MORTGAGES—FAILURE TO FILE CONSENT.

Where consent of stockholders to a corporate mortgage was not filed as required by Stock Corporation Law N. Y. § 6, the fact that the mortgage was recorded did not validate the same; section 7, validating such mortgages when recorded, etc., having no application, because the corporation did not receive value for bonds issued under the mortgage.

4. CORPORATIONS ⬥477(1)—CHATTEL MORTGAGE—FILING—NECESSITY.

Under Lien Law N. Y. § 231, declaring that mortgages creating a lien upon real and personal property executed by corporations need not be filed as chattel mortgages, such a mortgage issued by a corporation is not invalid as to personal property because it was not filed and recorded within a reasonable time after execution, as required by sections 230, 232.

5. SUBROGATION ⬥23(1)—VOLUNTARY PAYMENT.

To entitle a person to invoke the equitable right of subrogation, he must either occupy the position of a surety or have made a payment under an agreement that he should hold and receive an assignment of the debt as security; and hence a stockholder, who advanced money to a corporation to enable it to discharge a mortgage, is not entitled to subrogation to the rights of the mortgagee.

6. MORTGAGES ⬥298(4)—PAYMENT—REVIVOR.

A mortgage executed to secure a specific debt ceases to have any force after the payment of that debt, and cannot be revived to secure a new obligation without a new grant.

7. MORTGAGES ⬥25(6)—ACTION TO SET ASIDE—CONSIDERATION.

In a suit by the trustees of a bankrupt corporation to set aside a mortgage securing bonds held by stockholders, evidence held to show that the only consideration for the mortgage was antecedent debts.

8. CORPORATIONS ⬥542(2)—"TRANSFER"—WHAT CONSTITUTES.

Within Stock Corporation Law N. Y. § 66, declaring that no corporation which shall have refused to pay any of its notes, etc., shall transfer any of its property to any of its officers for the payment of any debt, etc., a mortgage is a "transfer."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

9. CORPORATIONS ⬥542(2)—TRANSFERS—STATUTE—CONSTRUCTION.

Stock Corporation Law N. Y. § 66, declaring that no corporation, which shall have refused to pay any of its notes or other obligations, shall

transfer any of its property, etc., having supplanted an earlier provision, which referred to notes or other evidences of debt, it must be assumed that no change in meaning was intended by the substitution of the word "obligations."

10. CORPORATIONS ⟨key⟩542(2)—TRANSFERS—VALIDITY—"OBLIGATION."

Under Corporation Law N. Y. § 66, declaring that no corporation, which shall have refused to pay any of its notes or other obligations when due, shall transfer any of its property to any of its officers or stockholders for the payment of any debt, the word "obligation," while not including open accounts, includes a contract complete on its face, and, where the corporation failed to make payments according to such a contract a mortgage to its stockholders to secure an antecedent debt was invalid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obligation.]

11. CORPORATIONS ⟨key⟩542(1)—FRAUDULENT CONVEYANCES—PREFERENCES.

A conveyance is invalid, as preferential, under Stock Corporation Law N. Y. § 66, declaring that no conveyance, assignment, or transfer by any corporation when insolvent with intent of giving a preference to any particular creditor, shall be valid, whenever the corporation or the officer making the conveyance, etc., must have known or expected that it would have the effect of working a preference.

12. CORPORATIONS ⟨key⟩542(1)—SUIT—PREFERENCE.

In a suit to set aside a mortgage given by a corporation to secure bonds issued to stockholders to whom the corporation was indebted, *held*, that the mortgage was invalid, under Stock Corporation Law N. Y. § 66, because working a preference.

In Equity. Suit by Louis Karasik and others, as trustees in bankruptcy of the Franklin Brewing Company, bankrupt, against the People's Trust Company, individually and as trustee under a certain alleged mortgage. Decree for complainants. Affirmed 252 Fed. 337, —— C. C. A. ——.

This is an action by the trustees in bankruptcy of the Franklin Brewing Company to set aside an alleged mortgage for $450,000 made by the Franklin Brewing Company to the People's Trust Company, as trustee, to secure the issue of certain bonds in like amount. The grounds on which the validity of the mortgage is attacked are that no certificate of consent of the stockholders of the corporation was subscribed, acknowledged, filed and recorded, as required by section 6 of the Stock Corporation Law of this state (Consol. Laws, c. 59); that the mortgage was never authorized by the board of directors, as required by section 34 of the General Corporation Law of this state (Consol. Laws, c. 23); that the mortgage is void, under section 66 of the Stock Corporation Law of this state, both as a transfer of its property to officers, directors, and stockholders, without the payment of cash therefor, after it had refused to pay its notes or other obligations and as a conveyance and security given when the corporation was insolvent or its insolvency was imminent, with the intent of giving a preference to a particular creditor over other creditors; that the bonds issued without the payment of any money to, labor for, or property received by the corporation, contrary to the prohibition of section 55 of the Stock Corporation Law; that the mortgage is void as to all the personal property intended to be secured thereby, because it was not filed and recorded within a reasonable time, as required by sections 230 and 232 of the Lien Law of this state (Consol. Laws, c. 33); that the making of the mortgage for the purpose of issuing and securing payment of bonds to the officers, directors, and stockholders of the corporation is contrary to equity

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and good conscience, and constituted a scheme to hinder, delay, and defraud the creditors of the corporation.

The Franklin Brewing Company was organized as a domestic corporation July 30, 1903, with a capital stock of $500,000, consisting of 5,000 shares, of the par value of $100 each. The corporation was organized by Claus Doscher, who had acquired in 1903 the plant and property of the Malcolm Brewing Company, at a public sale in insolvency, subject to an existing mortgage of $200,000, made by the Malcolm Brewing Company to the Nassau Trust Company, of the city of Brooklyn, February 24, 1891. Thereafter Claus Doscher transferred this property to the Franklin Brewing Company subject to the aforesaid mortgage of $200,000, which that corporation assumed, and the Franklin Brewing Company subsequently acquired other property. Claus Doscher, in transferring his property to the Franklin Brewing Company agreed to accept for the same 3,000 shares of the capital stock of that corporation, and he further agreed to purchase from time to time the remaining 2,000 shares of that stock, as and when the corporation should require the money for working capital. On July 30, 1903, Claus Doscher received 3,500 shares of the stock of the Franklin Brewing Company, and on the same day he gave 10 shares each to his attorney, Henry F. Cochrane, to his brother, Hermann Doscher, and to his three sons, Henry, Charles, and John Doscher making 50 shares, and he retained 3,450 shares of this stock up to the time of his death on July 6, 1910. He left a will, which was duly probated on July 12, 1910, by the surrogate of Kings county whereof he appointed his three sons Henry, Charles, and John Doscher, the executors and whereby he bequeathed and devised all of his estate (including the aforesaid 3,450 shares of Franklin Brewing Company stock) to his six children, Henry, Charles, and John Doscher, and Gesine Engel, Mathilda C. Behre and Caroline Candidus, in equal shares. Claus Doscher was the president, a director, and a stockholder of the Franklin Brewing Company from 1904 to 1910. During the same period Henry Doscher was the vice president, a director, and a stockholder; Hermann Doscher was the treasurer, a director, and a stockholder; Charles Doscher was the secretary, a director, and a stockholder; John Doscher was a director and stockholder; and Henry F. Cochrane was a stockholder. Upon the death of Claus Doscher, his son Henry Doscher was made president, John Doscher was made vice president, Hermann Doscher continued as treasurer, Charles Doscher continued as secretary, and Henry F. Cochrane was made a director; and the officers, directors, and stockholders continued as above to August 10, 1915, except that Charles Doscher was made both secretary and treasurer.

The company never paid a dividend upon its capital stock. It lost money every year of its existence from 1903, save the years 1905 and 1906, when a small profit was made. Prior to the year 1915 an unavailing effort was made to sell the property. The annual report of the Franklin Brewing Company for the year ending December 31, 1914, showed a loss of $30,013.49 during that year, and that the liabilities exceeded the assets in the sum of $119,599.98. At a stockholders' meeting held January 21, 1915, it was resolved that "in view of the state of the business of the company disclosed by the annual report, a committee of three, consisting of Henry Doscher, John Doscher, and Charles Doscher, be appointed to take the necessary and appropriate steps to wind up the business of the company," and at meetings of the board of directors on March 16 and May 3, 1915, the efforts being made to effect a winding up of the business were discussed. At length in July, 1915, the Doschers found in David M. Neuberger the relief they sought. It was finally agreed that Neuberger should assume the management and control of the Franklin Brewing Company; that the 3,450 shares of stock of that corporation owned and held by the estate of Claus Doscher, deceased, should be distributed, by giving 2,500 shares thereof to Neuberger and the remaining 950 shares thereof to the six children and legatees under the will of the said deceased; that the executors of that estate should, prior to October 1, 1915, loan the necessary money to obtain liquor tax certificates for the saloon keepers who were then customers of the Franklin Brewing Company; that

the then officers of that corporation should resign, and Neuberger and his associates should be made officers in their places; and that a mortgage for $450,000 should be given by the Franklin Brewing Company upon all of its real and personal property to secure the issue of bonds of a like amount in payment of the indebtedness claimed by the Doschers to be owing from the Franklin Brewing Company to the decedent Doscher's estate. An agreement in writing was then executed, about August 4, 1915, between Henry, John, and Charles Doscher, as executors of Claus Doscher, deceased, and David M. Neuberger, embodying substantially the above provisions. The preliminaries for the making of the mortgage having been thus arranged, the attorney for the Doscher estate prepared the mortgage which is the subject of this suit.

Henry Doscher had directed John J. Welsh, the bookkeeper of the company, to copy from the corporate books certain figures, which Welsh did, and handed a slip of paper containing these figures to Doscher, which he subsequently made use of at a meeting of the stockholders of the corporation on August 10, 1915. A meeting of the company was held, at its office, on August 10, 1915, at which all of the stockholders were present, and a resolution was presented setting forth: (1) That the Franklin Brewing Company was indebted to the estate of Claus Doscher in a sum exceeding $450,000, for money loaned and upon open account; (2) that the financial condition of the Franklin Brewing Company rendered it impossible for it to pay said indebtedness in whole or in part, and unless a reorganization of the company was effected, and an adjustment of this indebtedness was arranged, the company would have to discontinue business and dispose of its property at great sacrifice and loss, both to the Franklin Brewing Company and the estate of Claus Doscher; (3) that the executors of the estate of Claus Doscher, with the consent of all the legatees of that estate, were willing to accept a mortgage of $450,000 secured upon all of the real and personal property of the company, to be made to a trustee, to secure the issue to the legatees of said estate of 450 bonds, of $1,000 each, payable in 25 years, with interest at 4 per centum per annum; (4) that the stockholders recommended the execution and delivery of such mortgage to the People's Trust Company, as trustee, for the purposes aforesaid.

This resolution was discussed and voted upon and adopted by all of the stockholders at that meeting, as follows: Henry, Charles, and John Doscher, as executors of the estate of Claus Doscher, voted the 3,450 shares of stock owned by that estate; Henry, John, and Charles Doscher each voted the 10 shares of stock owned by them personally; Henry Doscher, by proxy, voted the 10 shares of stock owned by the estate of Hermann Doscher; and Henry F. Cochrane voted the 10 shares of stock owned by him. This made a total of 3,500 shares of stock voted, which was all of the stock outstanding. There was no meeting held of the board of directors of the Franklin Brewing Company authorizing the execution or delivery of this mortgage of $450,000, which is the subject of this suit; nor did any witness testify upon the trial that any such meeting was held. Immediately following the above-mentioned stockholders' meeting on August 10, 1915, the certificates for the 3,450 shares of capital stock of the Franklin Brewing Company owned by the estate of Claus Doscher were canceled, and new certificates for that 3,450 shares of stock were drawn up and executed, and distributed as follows: A certificate for 2,498 shares to David M. Neuberger; a certificate for 1 share each to Harry W. Bell and Hector Grassi; a certificate for 159 shares each to Henry and John Doscher; and a certificate for 158 shares each to Charles Doscher, Gesine Engel, Mathilda C. Behre, and Caroline Candidus—making a total of 3,450 shares of this stock; and at that time 50 other shares of the Franklin Brewing Company stock were already held, 10 shares each, by Henry, John, Charles, and the estate of Hermann Doscher, and Henry F. Cochrane. All of this stock was transferred to, and held and owned by, the above-named persons, respectively, prior to the execution or delivery of the mortgage of $450,000 which is the subject of this suit; and ever since August 10, 1915, the said Henry, John, and Charles Doscher, and the said Gesine Engel, Mathilda C. Behre, and Caroline Candidus have been and still are the

owners of the certificates of stock above mentioned, and these said six persons are also the legatees under the will of Claus Doscher, deceased, and are each entitled to an equal one-sixth distributive share of that estate.

Immediately following the stockholders' meeting, and after the certificates for the 3,450 shares of stock had been executed and distributed as above mentioned, there was held on the same day, August 10, 1915, a meeting of the board of directors of the Franklin Brewing Company. At this meeting Henry Doscher resigned as president, but continued as a director; John Doscher resigned as vice president and director; Charles Doscher resigned as secretary and treasurer and director; and Henry F. Cochrane resigned as director. David M. Neuberger was made president and treasurer and a director; Harry W. Bell was made vice president and a director, but never qualified; Hector Grassi was made a director; and John J. Welsh, the bookkeeper of the corporation, was made secretary. At this meeting of the board of directors no mention was made of the proposed mortgage of $450,000 which is the subject of this suit, or of any mortgage, and no authority was given for the execution or delivery of any mortgage by the Franklin Brewing Company.

The mortgage for $450,000 which is the subject of this suit was executed and delivered on August 10, 1915, but was not recorded until November 22, 1915. No certificate of consent of the stockholders of the Franklin Brewing Company was subscribed and acknowledged and filed or recorded in the office of the clerk or register of the county wherein the corporation had its principal place of business. Subsequent to the making and delivery of this mortgage, and pursuant to its terms, 450 bonds, of the face value of $1,000 each, were made by the Franklin Brewing Company and issued to the executors of Claus Doscher, and by them in turn issued and delivered, 75 bonds each, to Henry, John, and Charles Doscher, and Gesine Engel, Mathilda C. Behre, and Caroline Candidus. At the time this mortgage was executed, neither the People's Trust Company nor any other person or persons paid to the Franklin Brewing Company any cash money for this mortgage, nor did any person or persons pay any money, furnish any labor, or give property to that corporation for either the mortgage or bonds in question. The defendant the People's Trust Company never took possession of the real or personal property covered by the mortgage in suit; but the Franklin Brewing Company continuously after the making and delivery of the said mortgage remained in the possession, custody, and control of all of the said property until the appointment and qualification of the plaintiffs, as trustees in bankruptcy herein, and the taking possession of the same by them. The plaintiffs, as trustees in bankruptcy herein, immediately upon their appointment and qualification, on March 19, 1917, took actual possession of all the real and personal property of the Franklin Brewing Company, and all of the said property is now in their actual possession.

Samuel Evans Maires, of Brooklyn, N. Y., for complainants.

Wingate & Cullen, of New York City (Henry F. Cochrane, of Brooklyn, N. Y., of counsel), for defendant.

VEEDER, District Judge (after stating the facts as above). [1, 2] The validity of this mortgage is attacked on various grounds, which may be grouped as formal objections and objections which relate to the substantial merits. Considering the formal objections first, the complainants contend, in the first place, that the mortgage is invalid, because no certificate of consent of stockholders was filed in accordance with section 6 of the Stock Corporation Law of this state. The statutory requirement is that the mortgage—

"shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by a vote at a special meeting of the stockholders called for that purpose; * * * and a certificate under the seal of the corporation that such con-

sent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or vice president and by the secretary or an assistant secretary, of the corporation, and shall be filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business."

It is a fact that this mortgage was consented to by the unanimous vote of all the stockholders at a special meeting called for that purpose, and apparently each stockholder also consented in writing. At the trial the defendant produced a certificate of such consent, dated August 10, 1915, signed by Henry Doscher as president, and by Charles Doscher as secretary, with the corporate seal affixed, and attested by the secretary. The testimony for the defendant is to the effect that this paper was executed on the day it bears date, and was given to an employé, who was a notary, to take the acknowledgments. The testimony is rather vague, and the notary had no recollection of such an incident. However, the paper in evidence is not acknowledged, and it is conceded that no consent was ever filed and recorded as required by statute.

In the next place, it is conceded that the mortgage was never formally authorized by the board of directors of the corporation. Section 34 of the General Corporation Law of this state prescribes that "the affairs of every corporation shall be managed by its board of directors," acting through a majority present at a meeting duly assembled. In this case, as already shown in the statement, the stockholders as such, comprising all the directors and officers, consented to the mortgage in a meeting duly assembled. A directors' meeting immediately followed, at which the old directors and officers, save Henry Doscher, in turn resigned, and new directors and officers were elected or appointed by the remainder of the board to fill the vacancies as they occurred. It was by these new officers that the mortgage, dated the same day, was executed. But the minutes of the meeting contain no reference to the mortgage.

Both these omissions undoubtedly constitute grave formal defects, but I do not think that they are necessarily fatal. In both instances the substance is proved. So far as the absence of a resolution of the directors as such is concerned, every director had, as a stockholder, and as part of a substantially continuous transaction, deliberated and acted upon the proposal. People's Bank v. St. Anthony's Church, 109 N. Y. 512, 17 N. E. 408, relates to a special statute designed to safeguard the peculiar interests of a religious corporation. Of course, I rely upon the continuity of the prearranged transaction, and the supposition that the resignation of the retiring directors was not effectual to relieve them of their responsibility for the culminating act performed by their successors pursuant to a plan theretofore agreed upon. Otherwise, there is a total absence of any authorization by the directors, for it is not claimed that the new directors assented to the mortgage, directly or indirectly. Likewise the consent of the stockholders is proved to have been given. As the Court of Appeals said in Rochester Savings Bank v. Averell, 96 N. Y. 467:

"The consent of stockholders is the important and essential thing. The filing is formal and subsidiary."

This idea runs through all the cases, and in no case to which reference has been made has a mortgage been declared void where the stockholders had in fact consented. In Black v. Ellis, 129 App. Div. 140, 113 N. Y. Supp. 558, affirmed in 197 N. Y. 402, 90 N. E. 958, on other grounds, a majority of the court held that, in view of the finding of the court below that consent had been given, the mere failure to file proof of the fact did not render the mortgage void. A minority dissent was based upon the ground that the finding of the lower court really showed that the stockholders consented only in the sense that they did not object. In the case of In re Post & Davis Co., 219 Fed. 171, 135 C. C. A. 69, where the Circuit Court of Appeals for this circuit held that a chattel mortgage executed by a corporation without the required consent properly evidenced was invalid and could not be ratified, Judge Lacombe stated:

"There is no pretense that any written assent was ever signed, or that it was ever voted at any stockholders' meeting, special or general."

[3] And my conclusion that the failure to file the consent is not fatal derives no support from section 7 of the New York Stock Corporation Law (upon which the defendant relies), which provides in substance that whenever a mortgage as recorded recites that its execution was duly consented to or authorized by the stockholders, after public record thereof for more than one year, "and the corporation shall have received value for bonds actually issued under and secured by such mortgage, and interest shall have been paid on any of such bonds," such recital "shall be conclusive evidence that the execution of such mortgage has been duly and sufficiently consented to," etc. For, as I shall show, the corporation did not receive value for the bonds issued under this mortgage, and hence this validating provision is inapplicable.

[4] Nor do I find to be well founded the complainant's further contention that the mortgage is void as to all the personal property intended to be secured thereby, because it was not filed and recorded within a reasonable time after its execution in accordance with sections 230 and 232 of the Lien Law of this state. The delay in recording was in fact more than three months. But the intermediate section (231) of the Lien Law expressly provides that:

"Mortgages creating a lien upon real and personal property, executed by a corporation as security for the payment of bonds issued by such corporation * * * and recorded as a mortgage of real property, * * * need not be filed or refiled as chattel mortgages."

Consideration of the further objections to the validity of the mortgage, which go to the substance rather than to formal requisites, is dependent upon findings of fact with respect to the situation on August 10, 1915, when the mortgage was made.

In the first place, the corporation was then plainly insolvent. Its books show that on July 31, 1915, its assets were $935,720, its liabili-

ties $1,076,054, leaving a deficiency of $140,334. On August 31, 1915, the deficiency had increased to $144,167, and on November 30, 1915, to $147,332. On July 31, 1915, there was owing to unsecured merchandise creditors the sum of $23,343, over $20,000 of which was long past due. This had increased to $33,318 on August 31st, and to $57,963 on November 30th. In addition there was owing on notes to the North Side Bank, on and after July 31, 1915, the sum of $27,-000. This indebtedness steadily increased until, at the time of the filing of the petition in bankruptcy, the sum owing to unsecured creditors amounted to $176,723. During the month of July, 1915, the corporation's average daily bank balance was only $923.86; from August 1st to August 10th only $1,443; and on August 10th, when the mortgage was made, it had on deposit only $951. During all this time, and long before, merchandise creditors, pressing for payment of their past-due accounts, were told by the cashier in more than one instance that the company had no funds.

The financial condition of the company was well known to the Doschers. They knew that it had lost money every year from 1903, save that a small profit had been made in 1905 and 1906. At the stockholders' meeting on January 21, 1915, where a financial report for the year 1914 was submitted, showing a loss of $30,013, a resolution was unanimously adopted appointing a committee "to take the necessary and appropriate steps to wind up the business of the company." The minutes of successive meetings of the board of directors on March 16th and May 3d of the same year refer to the efforts being made to wind up the business; and the preamble to the resolution of the stockholders on August 10th, consenting to the mortgage in issue, after stating that the "company is indebted to the estate of Claus Doscher in a sum exceeding four hundred and fifty thousand dollars for money loaned and upon open account," continues:

"And whereas, the financial condition of the Franklin Brewing Company renders it impossible for it to pay said indebtedness in whole or in part, and unless a reorganization of the company is effected, and an adjustment of this indebtedness is arranged, the company will have to discontinue business and dispose of its property at great sacrifice and loss, both to the Franklin Brewing Company and the said estate of Claus Doscher."

Of course, it is entirely immaterial that the Doschers were financially able to pay any or all of the company's indebtedness if they saw fit. They were under no legal obligation to continue their advances, and it was inevitable that they would at some time cease to carry this burden, as the event proved.

The next material inquiry relates to the manner in which the aggregate amount of this mortgage was made up and the basis upon which it rests. The evidence shows that one of the Doschers instructed the company's bookkeeper to make out a statement of the aggregate of the following items: (a) Loans made by the Doscher estate to the company ($178,850), with interest due thereon ($15,310); (b) the so-called bond and mortgage account, being the $200,000 advanced by Claus Doscher in 1906 to pay off the mortgage then out-

standing on the company's property, with interest due thereon ($25,-000); (c) the $12,000 mortgage on the parcel, No. 1360 Myrtle avenue, which the Doschers had agreed with Neuberger to cancel, with interest due thereon ($400). The total of these items is $431,560. For the remaining sum necessary to make up the total of $450,000 the bookkeeper was instructed to make a mere book entry, and he described it, of his own accord, as reorganization expense. Of these items, then, the loan account, of $178,850, concededly represented mere antecedent indebtedness for advances made from time to time. The $12,000 mortgage on the property No. 1360 was neither paid nor canceled, and therefore represents no value. Nor did the book entry of $17,000 and over.

The defendant contends, however, that the so-called bond and mortgage account of $200,000 stands upon a different basis. It appears that on December 29, 1906, Claus Doscher delivered his check for $200,000 to the company, and that on the same day the company paid to the Nassau Trust Company, the mortgagee named in the Malcolm Brewing Company mortgage of 1891, a like sum, with instructions to use the same in payment and cancellation of the bonds issued under that mortgage. This was done by January 9, 1906, when the mortgagee delivered to Doscher the mortgage and a satisfaction piece. This satisfaction piece was never filed. Claus Doscher's loan of $200,000 on December 29, 1905, was originally entered in the company's books under the heading "Claus Doscher Loan Account." But on January 31, 1906, this item was transferred to a new account then opened, called "Bond and Mortgage Payable Account," and so remained until bankruptcy. By whose direction or authority this change was made does not appear. By a provision of the agreement by the executors of Claus Doscher with Neuberger the former agreed to "discharge and cancel of record a certain mortgage of two hundred thousand ($200,000) dollars, now a lien on, and of record against, the Franklin Brewing Company." This agreement was not performed, and the mortgage was finally satisfied of record, upon the application of the complainants as trustees, without the production of the original mortgage, by an order of the Supreme Court dated October 8, 1917.

[5-7] On these facts the defendant's claim that the mortgage was continued, and that Doscher succeeded to the rights of the mortgagee by subrogation, cannot be sustained. To entitle a person to invoke the equitable right of subrogation, he must either occupy the position of a surety of·the debt or have made the payment under an agreement that he should receive and hold an assignment of the debt as security. A mortgage executed to secure a specific debt ceases to have any force after the payment of that debt, and cannot be revived to secure a new obligation without a new grant. In this case the proof shows nothing more than the delivery of Doscher's check to the company and the payment by the company to the mortgagee. The mere unauthorized entry of this mortgage as such on the books of the company does not constitute a new grant, so as to enable Doscher to

be subrogated to the original bond and mortgage, which had been paid on January 9, 1906.

So far, then, as the items which made up the $450,000 mortgage are concerned, it is plain that the $17,000 book entry and the unfulfilled promise to cancel the $12,000 mortgage on the Myrtle avenue property represented no value whatever, and the so-called bond and mortgage account of $200,000 represents nothing higher in the scale of obligation than the loan account, properly so called, of $178,850. In other words, so far as the mortgage in issue was based upon any consideration whatever, it represented merely unsecured antecedent indebtedness. It is so described in the very first recital of the resolution adopted by the stockholders at their meeting on August 10, 1915, which reads:

"Whereas, the Franklin Brewing Company is indebted to the estate of Claus Doscher in a sum exceeding four hundred and fifty thousand dollars for money loaned and upon open account," etc.

But the defendant claims further that, even so, there was other valuable consideration given; and reference is made to (a) the further loan of $56,000 to secure liquor tax certificate, to (b) the renewal of the $27,000 loan by the North Side Bank, and to (c) the fact that the bonds issued under the mortgage carried only 4 per cent. interest. The matter of the $56,000 loan for liquor tax certificate is provided for in the agreement of the Doscher estate with Neuberger. It reads:

"The parties of the first part, as executors, are to loan, or cause to be loaned, the money necessary to obtain the liquor tax certificates of the present customers of the company for the certificates due on the 1st day of October, 1915; such money so advanced to be secured by assignment or otherwise, so as to invest the parties of the first part, or the lender of such liquor tax money with the complete ownership of such tax certificates, and the money paid by the said customers in payment for such certificates, is to be set aside or paid over to the lenders as the same is paid to the said Franklin Brewing Company by such customers. The said Franklin Brewing Company to execute any and all instruments required by the lenders to further secure them for the money so loaned."

Of this provision it is to be observed, in the first place, that it is a separate agreement, entirely apart from the mortgage in issue, made with a person who had no connection with the company; and the license money provided for forms no part of the mortgage, but is an independent transaction. Moreover, the executors promise merely "to loan, *or cause to be loaned*, the money necessary to obtain the liquor tax certificates of the *present* customers," and "such money so advanced to be *secured* by assignment or otherwise"—the company to "execute any and all instruments required by the lenders to further *secure* them for the money so loaned." The Doscher estate did afterwards loan this sum of $56,000, under an agreement made with the company on September 20, 1915; but the separate and independent character of the transaction is shown by the fact that $35,000 of this $56,000 loan was repaid, and the lenders have proved their claim in bankruptcy for the balance.

The renewal of the $27,000 loan by the North Side Bank (of which Henry Doscher was vice president) is not claimed to have been made under any written agreement. Henry Doscher testified that he had an oral understanding with Neuberger that the loan would be renewed. Neuberger denies this, and states that it was merely renewed in the usual course of business. It was doubtless renewed because it could not be collected. This inference is also applicable to the defendant's final contention that the reduction of interest from the legal rate to 4 per cent., as specified in the mortgage, constituted a valuable consideration. If, as I have found as a fact, the company was insolvent, and in view of the recital of the resolution adopted by the stockholders on August 10, 1915, that the financial condition of the company rendered it impossible for it to pay the indebtedness in whole or in part, consideration can hardly be based upon the rate of interest. In short, I find that, not only was no value received by the company at the time the mortgage was made, but that, so far as it was not purely fictitious, it was based solely upon antecedent unsecured indebtedness.

[8-10] Under such circumstances the complainants contend that the mortgage is void under section 66 of the New York Stock Corporation Law. This section relates (a) to transfers to officers, directors, or stockholders in particular, and (b) to conveyances, assignments, or transfers in general; and every transfer, assignment, or other act done in violation of its provisions is declared to be void. The complainants urge that the mortgage is void under both clauses. And such is my conclusion. The first clause of this section provides:

"No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash."

A mortgage is a transfer within the meaning of this section. Munson v. Genesee Iron & Brass Works, 37 App. Div. 203, 56 N. Y. Supp. 139; Caesar v. Bernard, 156 App. Div. 724, 736, 737, 141 N. Y. Supp. 659, 668, 669. There was no cash consideration for the mortgage, but merely a transfer by way of security for an antecedent debt. The transfer to the prohibited persons was indirect, in that the bonds were issued first to the executors of the Doscher estate; but they were immediately transferred by the executors to the individual beneficiaries under Claus Doscher's will. The statutory provision applies, therefore, if the company had refused to pay any of its notes or other obligations when due. There is no proof of refusal to pay any notes. There is abundant proof of refusal to pay merchandise creditors, who had supplied goods on open accounts. In three instances the proof shows a written offer and acceptance, but in two of these the amount actually due does not appear on the face of the writing, and can be ascertained only by an inspection of the books. In the case of the Shipley Construction & Supply Company, however, a written offer to supply a specified piece of machinery for a stated price was definitely

accepted by the Brewing Company and the contract is complete on its face. It is of no consequence, for the purpose of the present inquiry, that a freight rebate of a few dollars was afterwards allowed on the shipment.

Prior to the enactment of this section of the Stock Corporation Law a similar provision in the Revised Statutes (1 R. S. 603, 604) referred to "notes or other evidences of debt," and it must be assumed that no change in meaning was intended by the substitution of the word "obligations." The word "obligation" originally meant a bond containing a penalty with a condition for the payment of money or to do or suffer some act or thing. The meaning of the word has been gradually enlarged by the courts beyond its original meaning of a bond obligatory, and has come to mean a paper by which some fixed duty is assumed to be performed at a certain time, or an instrument in writing whereby one party contracts with another for the payment of money at a fixed date or for the delivery of specific articles. However various have been the definitions given the word, the essential element has always been that it must be a written engagement by which a fixed duty is assumed. In other words, it must be complete on its face, and not dependent upon an examination of books of account or bills presented. Munzinger v. United Press, 52 App. Div. 338, 65 N. Y. Supp. 194. It is clear, therefore, that open accounts are not obligations; nor are made such by a written proposal and acceptance which does not disclose the amount due. But the contract of the Shipley Construction Supply Company is an obligation in the proper sense of the term, and the company's refusal to pay it supplies the remaining condition for the operation of the statute.

[11, 12] I am of opinion that the mortgage is also void under the second clause of section 66. The provision is:

"No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by an officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."

In view of the conclusions which I have already reached, the only material inquiry under this provision is whether this mortgage was made with the intent of giving a preference. What, then, is the meaning of intent to prefer as used in the statute? This language has been construed by the Circuit Court of Appeals for this circuit in Cardozo v. Brooklyn Trust Co., 228 Fed. 333, 142 C. C. A. 625, where the court adopted this statement of the court below:

"It seems to me that the true meaning is that, to constitute a preference, the corporation or its officer making the payment must have known or expected that it would have that effect. Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880. The statute is meant to apply when the corporation is confronted with the problem: How are the assets of the corporation to be used, not in carrying on its business, but in meeting its obligations? Olney v. Baird, 7 App. Div. 95, 110, 40 N. Y. Supp. 202. In other words, the question is whether the payment was made in contemplation of insolvency and winding up as an

impending fact, or in contemplation of continuing business in good faith; and this question must be determined, of course, as an inference from the surrounding facts."

See, also, In re Salvator Brewing Co. (D. C.) 183 Fed. 910.

If this be the criterion, I am of opinion that the intent in this case to prefer is established by the evidence. The Doschers had carried this unprofitable business for several years, and found themselves more deeply involved each year. They finally decided, as the corporate records expressly state, to wind up the business. Efforts to sell to other brewers were unsuccessful. Evidently, as a last resort, negotiations were opened with Neuberger, who was a lawyer with some experience in handling brewing properties. There is nothing in the evidence to indicate that the Doschers had any reason to expect that Neuberger would be likely to succeed where they had failed. My inference is that they were not concerned with the outcome. They had determined to shift the burden, and their sole concern was their investment. Since they had been unable to realize upon their investment by means of a sale, they evidently concluded that the best available alternative was to secure a first lien upon the property by way of mortgage, and thereby secure themselves against eventualities which their experience led them, with good reason, to expect. For they knew—indeed, they expressly admitted—that the financial condition of the company was such that their antecedent indebtedness could not be paid in whole or in part. The form of the agreement finally reached with Neuberger is significant of their intention, for they presented to him outright 2,500 of the 3,500 shares of the corporation then outstanding. Under all the surrounding circumstances, I can reach no other conclusion than that they believed and intended that the mortgage in issue would effectively prefer them over other creditors of the company who were clamoring for payment.

Apart from the statute, I think the conclusion that this mortgage is null and void would necessarily follow upon grounds of equity and good conscience. The question of jurisdiction has been determined by a prior decision of this court. Karasik et al. v. People's Trust Co., 241 Fed. 939.

A decree will be granted for the relief prayed for in the complaint. It must be settled on notice on or before December 31st.