JOHNSON, Judge
(specially concurring) :
I concur with Judge Sturgis in affirming, but for the following reasons:
The appellant, Maas Brothers, Inc., proclaimed its retail installment sales credit plan, sub judice, to constitute a “revolving account” within the meaning of Section 2, subsection 8 of Chapter 59-414 Laws of Florida 1959, now appearing as Section 520.31, Florida Statutes, F.S.A. In connection with the effectuation of this plan, the appellant issued what it termed a “Flexible Charge Account Agreement”, on the face of which there were, inter alia, the following very material elements:
(1) A promise to pay by the buyer.
(2) A retained title to the merchandise sold under this Agreement.
(3) The signing of a sales slip by the buyer or by the seller as agent for the buyer if the purchase is made by telephone or mail.
The question imposed by the appellant, who was the plaintiff below, in his complaint for declaratory decree was whether or not the installment sales plan supra, and its effectuating documents, were subject to the documentary stamp tax or excise tax imposed by section 201, Florida Statutes 1963, F.S.A., particularly section 201.08 thereof. The complaint also prayed for general relief. Attached to the complaint and made a part thereof was a copy of the Flexible Charge Account Agreement and a copy of a letter from the State Comptroller advising the plaintiff that such flexible charge account was subject to documentary stamp tax under section 201.08 paragraph (2), Florida Statutes, F.S.A.
The complaint was such that it did not require an answer from the defendant, Ray E. Green, as Comptroller of the State of Florida, but an issue on the pleadings was raised by the defendant’s motion for summary judgment in the defendant’s favor filed on June 22, 1964, and the motion for summary judgment in its favor by the plaintiff on June 30, 1964. On April 23, 1965r the chancellor entered his decree wherein he determined that the business transaction of the plaintiff-appellant described in the plan of plaintiff, was not taxable under section 201.08(2) Florida Statutes, F.S.A., but was taxable under section 201.08(1) Florida Statutes, F.S.A. In his order the chancellor set forth at length his reasons for the conclusions reached by him. I do not disagree with the chancellor’s reasoning nor the end result arrived at by him, but I think there should be enumerated some other specific reasons for arriving at such conclusions which the chancellor probably considered but did not include in his findings, inasmuch as this case will probably be of great importance as a future guideline in similar instances and appears to be a case of first impression and interpretation of this particular statute as related to the facts or similar facts herein involved. This I will attempt to do as follows:
Chapter 520, Florida Statutes, F.S.A., relates to installment sales and defines “retail installment transaction” as follows:
“520.31(6) ‘Retail installment transaction’ or ‘transaction’ means a contract to sell or furnish or the sale of or the furnishing of goods or services by a retail seller to a retail buyer pursuant to a retail installment contract or a revolving account.”
And defines the “revolving account” as follows:
“520.31(8) ‘Revolving account’ or ‘account’ means an instrument or instruments prescribing the terms of retail installment transactions which may be made thereafter from time to time pursuant thereto, under which the buyer’s total unpaid balance thereunder, whenever incurred, is payable in installments over a period of time and under the terms of which a time price differential is to be computed in relation to the buyer’s unpaid balance from time to time.”
*638 And also defines “cash sales price” as follows:
“520.31(9) ‘Cash sale price’ means the price for which the seller would have sold or furnished to the buyer, and the buyer would have bought or obtained from the seller, the goods or services which are the subject matter of the retail installment transaction, if such sale had been a sale for cash. The cash sale price may include any applicable taxes and charges for delivery, installation, servicing, repairs, alterations, or improvements.”
And also defines “time price differential” as follows:
“520.31(11) ‘Time price differential’ means the amount, however denominated or expressed, paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments; it does not include the amounts, if any, charged for insurance premiums, delinquency charges, attorney’s fees, court costs, or official fees.”
Chapter 520.35, Florida Statutes, F.S.A., sets out the procedure and requirements for a revolving account and this procedure the appellant followed in preparing the forms for its Flexible Charge Account Agreement. It particularly attempted to eliminate this transaction from the tax imposed by virtue of section 201.08(2), Florida Statutes, F.S.A. by making all of the sales thereunder conditional, by retaining title thereto until paid for. The chancellor found and decreed that this transaction being ■“patently a conditional sales agreement” that it did not come within the operations of section 201.08(2), Florida Statutes, F. S.A. This I agree with, as the instrument clearly shows on its face the retained title to the merchandise.
We are now confronted with the question of whether or not the transaction supra, sub judice, with its written document effectuating'the plan comes within the- purview of 201.08(1), Florida Statutes,' F.S.A., for taxation as decreed by the chancellor.
The Attorney General of Florida has ruled (Op.Atty.Gen. 059-274, December 28, 1959, Biennial Report of Attorney General 1959-1960, p. 435) that “revolving accounts described in 520.35 Florida Statutes [F.S. A.] are not within themselves written obligations for the payment of a sum certain; * * * no one may determine from the face of such contract what amount of money, if any, will be due and payable thereunder at any given time. Should one, at the time of execution, attempt to stamp it, he could not determine the amount of stamps to affix”.
The lower court found that the execution of the original Flexible Charge Account Agreement, standing alone, would not create such a promise to pay as would be taxable; but that a contract could consist of two or more documents which could be construed together to determine the rights and obligations of the parties. As a matter of fact, section 520.34(3) expressly provides that a retail installment contract need not be contained in a single document but that the sales slip or other written statement relating to each purchase, when construed with the installment document, should constitute the retail installment contract for each purchase. The appellant contends in his brief that said Flexible Charge Account Agreement does not (1) come within the purview of 201.08(1) because no certain sum of money is due from its customer at the time the agreement is made, and (2) that it is not covered by subsection (2) of the same statute because it is conditional in character. We have disposed of the second contention supra.
As to the first contention, the chancellor did not hold that the Flexible Charge Account Agreement standing alone constituted a taxable contract, but in fact, held exactly to the contrary. The chancellor, did, how *639 ever, hold that the signing of the sales slip at the time of each purchase was such act on the part of the purchaser to consummate a separate contract between the purchaser and the seller, which constituted an obligation and promise to pay which was taxable under 201.08(1) ; with this I agree.
I think the point raised by the appellant that said transaction did not come within the purview of the last cited statute needs to be treated further inasmuch as there appears to be some misunderstanding of the interpretation of the Attorney General heretofore made with reference to revolving contracts and revolving accounts as shown in Opinion Attorney General 059-259, December 8, 1959, Biennial Report of the Attorney General, 1959-1960, page 411, and Opinion Attorney General 059-274, December 28, 1959, Biennial Report of the Attorney General 1959-1960, page 435, which indicated that transactions similar to the one in question were not taxable under 201.08(1), but if taxable at all, would have to be under section 201.08(2), unless the sales were conditional. This question becomes further confused by the Attorney General’s Opinion 061-23 January 8, 1961, Biennial Report of Attorney General 1961— 1962, page 34, holding such installment contracts to come within the purview of 201.08 (2), Florida Statutes, F.S.A. The portions of the Attorney General’s Opinion quoted in the appellant’s brief and the portion of the last mentioned opinion when considered out of context with the remainder of those opinions and in connection with specifically related facts in each of those opinions, are confusing but not conflicting.
As used in 201.08(1), Florida Statutes, F.S.A., the words “written obligation to pay money”, have been construed by the federal court in Karasik et al. v. People's Trust Co., D.C., 252 F. 324, 335 as follows, speaking of the word “obligations” as follows:
“The meaning of the word (obligation) has been gradually enlarged by the courts beyond its original meaning of a bond obligatory, and has come to mean a paper by which some fixed duty is assumed to be performed at a certain time, or an instrument in writing whereby one party contracts with another for the payment of money at a fixed date * *
We therefore conclude that the retail installment transaction as defined in section-520.31 (6) and which is used in defining the “revolving account” as shown in section 520.31(8) became a completed and consummated transaction or a contract or obligation to pay money the instant the sales slip was signed by the purchaser or by the seller as agent for the purchaser as authorized in said agreement. The amount involved and which is taxable was thereby fixed by the amount of the sales slip. The promise to pay was completed and unconditional although the amount of each installment was to be later determined by a fixed schedule contained in the agreement. The mere fact that a time price differential of one and one-half per cent per month based on the unpaid balance at the end of each month’s billing date was to be added to the sums owing by the purchaser, and which he agreed to pay, does not render the taxable obligation or document incomplete when construed in the light of the definition “time price differential” as provided in 520.31(11) wherein it is provided:
“(11) ‘Time price differential’ means the amount, however denominated or expressed, paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments; it does not include the amounts, if any, charged for insurance premiums, delinquency charges, attorney’s fees, court costs, or official fees.”
The doctrine of ejusdem generis is not applicable in construing section 201.08, Florida Statutes, F.S.A., because this statute does not stand alone in determining the law of this case. We must necessarily look to the other statutes under which the *640 documents are prepared, as shown on the face thereof, to help determine the true nature of the instruments involved. The terms and definitions used in the statute prescribing the form and substance of this type of transaction, installment sales contracts and revolving accounts, must of necessity be invoked to find the applicable taxing provision.
I therefore conclude that for the foregoing reasons and interpretations of the applicable statutes, the chancellor was correct in determining that the business transactions of the plaintiff-appellant, sub judice, were taxable within the purview of section 201.08(1), Florida Statutes, F.S.A., and said decree should be
Affirmed.