**DREWEN et al. v. UNION DISCOUNT CO., Inc.**

**Ex parte PARSONS, CLOSSON & Mc-ILVAINE.**

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 333.

Ellwood Thomas, of New York City, for appellants.

Francis Dean, of New York City, for complainants appellees.

Knowlton Durham, of New York City, for certain claimants appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The suit in which the order appealed from arises was one in equity for the appointment of a receiver of the defendant, Union Discount Company, Inc., and was commenced on September 22, 1927.

About January 2, 1926, the defendant corporation, when in need of funds to meet its current obligations and to continue its business, executed a trust instrument and deposited with the trustee named therein certain securities as collateral to corporate trust notes. Thereafter the defendant executed a further trust instrument, under which additional collateral, as well as that already pledged, was delivered to trustees. Some of the notes issued under the second indenture were issued for actual cash used in the course of the corporation's business, principally for the payment of creditors. Other notes were issued in payment of or as security for a

lease entered into by the corporation, and still others were issued to creditors in payment of the corporation's indebtedness.

The appellants, Parsons, Closson & McIlvaine, acted as attorneys for the defendant during the years 1922, 1923, 1924, and 1925, and for their work a bill was rendered to the corporation for legal services in the sum of $26,718.34. The amount of the bill is admitted to have been reasonable. After conferences looking towards payment of this bill, a note under the second trust instrument was issued on or about May 14, 1926, in full payment of the indebtedness.

The defendant finally defaulted in payment of its notes, and thereafter the stock deposited as collateral with the trustees was sold, and the proceeds were deposited to the receivers' account, subject to the further order of the court. The receivers in equity sought instructions regarding the proper distribution of the fund among the noteholders. The District Judge rendered a decision in which he held that the note issued to Parsons, Closson & McIlvaine constituted an illegal preference under the laws of New York, and that the firm was not entitled to share in the distribution of the fund in court. From that decision the present appeal was taken.

In reaching the foregoing conclusion, the District Judge relied upon section 15 of the New York Stock Corporation Law (Consol. Laws, c. 59), which provides as follows:

"No conveyance, assignment or transfer of any property of any such corporation * * * nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder, when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *"

The record contained an affidavit by Watson (chairman of the board of directors of the defendant and afterwards one of the receivers in equity) that in October, 1925, he instituted an investigation into its affairs, the outcome of which indicated flagrant misrepresentations and fraud in the sale of the capital stock of the company, gross mismanagement of its business, heavy pecuniary losses to the stockholders, complicated and involved internal conditions, and a financial crisis bordering on bankruptcy. Watson further stated that he took precautions to prevent further losses, and instituted restitution suits against the former officers as soon as the internal conditions of the company made it advisable, and added that for two years he devoted his entire time to the problems of the company, in an endeavor to maintain it as a going concern, so that, in the event of a recovery in the pending suits, the company might be rehabilitated and reorganized, and the stockholders might be given an opportunity to recoup their losses.

A tentative balance sheet of the defendant as of December 31, 1926, showed an excess of assets over liabilities of $116,902.40. Whether there was a real excess or a deficiency largely depended on whether the item among the assets described as "probable cash receipts from pending suits and government claims," carried at $210,000, had any substantial value. If we assume that the corporation was insolvent at the time Watson endeavored to rehabilitate it, yet officers carried on the business for nearly two years before the receivers in equity were appointed, and for more than a year after the collateral note was delivered to Parsons, Closson & McIlvaine. They certainly did this only in the hope of saving something for the stockholders.

On January 15, 1927, Watson reported to the stockholders that the situation had improved, that the outlook for 1927 was very encouraging, and that he believed money would be made. There is nothing in the record to show any purpose on the part of the persons managing the affairs of the Union Discount Company, Inc., to prefer Parsons, Closson & McIlvaine, or its other creditors. Whether the company was solvent, or not, at the time Watson took charge of its affairs, there was evidently the honest purpose to extricate it from its difficulties, and to save or build up an equity for the stockholders, rather than to wind up its affairs. There can be no other reasonable explanation for continuing the business for many months and for adding fresh capital from a sale of the corporate notes.

It is said that the claim of Parsons, Closson & McIlvaine to an interest in the fund in court is invalid because:

(1) The collateral note could only be issued for cash.

(2) It was issued without a valid consideration.

(3) It was invalid by reason of section 15 of the New York Stock Corporation Law, because given with an intent to prefer when the corporation was insolvent.

It is true that the trust indenture recited that the corporation desired to sell the collateral notes for cash, yet they were not limited by its terms to such a use. The trial judge, we think correctly, in substance held

that the notes were issued for general corporate purposes.

There is nothing in the contention that the notes were issued without a valid consideration, because they were given for an antecedent debt. Section 51 of the Negotiable Instruments Law of the state of New York (Consol. Laws, c. 38) precludes such a view. It reads as follows:

"Sec. 51. *What Constitutes Consideration.* Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

The third ground of supposed invalidity is likewise unsound. Under section 60 of the Bankruptcy Act (11 USCA § 96) a payment by an insolvent to a creditor within four months before the filing of the petition is a voidable transfer, if the creditor, "or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference." No bankruptcy is involved here.

Section 15 of the New York Stock Corporation Law depends on entirely different considerations. Under this section the avoidance of a transfer depends upon the intent of the transferor to give a preference, and not, as in case of section 60 of the Bankruptcy Act, on whether the transferee has reasonable cause to believe that a preference will result.

Such was held to be the meaning of the New York statute in Dill & Collins Co. v. Morison, 159 App. Div. 583, 144 N. Y. S. 894, and in Van Slyck v. Warner, 118 App. Div. 40, 103 N. Y. S. 1, affirmed 192 N. Y. 547, 84 N. E. 724. Our decisions have been to the same effect. In Cardozo v. Brooklyn Trust Co., 228 F. 333, we affirmed a decree by Judge Veeder on his opinion, in which he had said:

"What, then, is the meaning of 'intent to prefer' as used in the statute? In the sense that a person is said to intend the natural consequences of his acts, it may be argued that any payment to one creditor at a time when a corporation is unable to pay all creditors manifests an intention to prefer the creditor who is actually paid. But this is obviously not the meaning of the statutory requirement of an intent to prefer in addition to insolvency, for such a construction would render the required intent superfluous and virtually eliminate it from the statute. It seems to me that the true meaning is that, to constitute a preference, the corporation or its officers making a payment must have

known or expected that it would have that effect. * * * In other words, the question is whether the payment was made in contemplation of insolvency and winding-up as an impending fact, or in contemplation of continuing business in good faith. And this question must be determined, of course, as an inference from the surrounding facts. * * * *"

See, also, Karasik v. People's Trust Co. (D. C.) 252 F. 324, affirmed (C. C. A.) 252 F. 337.

It is clear that no intent to prefer Parsons, Closson & McIlvaine was established, but rather a purpose to secure them while the corporation was continuing business in the expectation of extricating itself from financial embarrassment.

The order is modified, so as to direct that the appellant be paid its proportionate share of the fund, based upon its note for $26,700.