**EMERSON v. BERMAN et al.**
No. 230.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

David Haar, of New York City, for appellant.

John H. Gamaldi, of New York City, for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.
The complaint sets forth two causes of action: The first under section 60b of the Bankruptcy Act (11 USCA § 96 (b) to recover payments made to the defendants who were directors and officers of the Eureka Upholstering Company at a time when it was insolvent and within four months of the date of the filing of a petition in bankruptcy against it, the effect of which, as defendants had reasonable cause to believe, would be to create a preference; the second to recover the same payments made when the company was insolvent under the Stock Corporation Law of the state of New York (Consol Laws, c. 59), or insolvency was imminent. The trial court dismissed the bill of complaint as to both causes of action on the ground that insolvency was not established at the time when the payments were made. The only payment in question on this appeal is one of $5,000, made to the Globe Parlor Suit Company on or about February 24, 1930. The Globe Parlor Suit Company was a partnership of which Max Berman and Meyer Goldberg were members. Berman was the president and Goldberg was the vice president of the Eureka Company, and, at the time of the payment of $5,000, their firm had been a creditor of the Eureka Company for some seven months, and they were pressing for payment of its claims. The Globe Company had sold fabrics to the Eureka Company for use in its business. In February, 1930, debts of the Eureka Company to the amount of about $30,000 were unpaid, and on several occasions it had overdrawn its bank account. Berman and the other directors wished to raise money for Eureka, and to that end assigned about $20,000 of corporate accounts to the Etco Trading Company on which they received advances of $12,000, and used the proceeds in part to pay $5,000 upon an indebtedness of $7,501.76 to the Globe Parlor Suit Company, and also to pay other pressing creditors. On February 28 the accounts

payable to general creditors amounted to $17,875.02, the indebtedness due Etco Trading Company to $11,234.13 and the notes payable to $1,162.08, making a total of liabilities equal to $30,271.23. The assets, exclusive of the merchandise inventory, a claim upon a stock subscription of $422 and a deposit with a gas company of $200, amounted to $29,055.71. The inventory was valued in the testimony of two witnesses and by the trial court at $3,500, so that the total assets on February 28 equaled $33,177.71. There was thus a net surplus of assets over liabilities of $2,906.48. Even if there should have been some deduction for discounts on payments of accounts receivable, they would have been apparently to a great extent offset by discounts on accounts payable, so that the company was solvent by upwards of $2,-000. The trial court found that its net worth on January 31, 1930, amounted to $2,202.94. We think the findings were supported by the evidence and that the company was not insolvent in the bankruptcy sense when the payment of $5,000 was made to Globe Parlor Suit Company. Accordingly the first cause of action was properly dismissed.

■ We now come to the second cause of action based upon the claim that, under section 15 of the Stock Corporation Law of the state of New York, the payment was made when the corporation was insolvent or its insolvency was imminent. The pertinent clauses of that section are the following:

"§ 15. *Prohibited transfers to officers, stockholders, directors or creditors.* No corporation which shall have refused to pay any of its notes or other obligations, when due, * * * shall transfer any of its property to any of its officers, directors or stockholders, * * * for the payment of any debt. * * * No conveyance, assignment or transfer of any property of any such corporation by it * * * nor any payment made, * * * when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except as to any rights or interests which may be acquired thereunder by any person without notice or reasonable cause to believe that such * * * payment * * * would effect a preference. * * *"

In considering the effect of the foregoing statute, we start with the assumption, justified as we believe by our prior discussion, that, at the time of the payment to Globe

Parlor Suit Company, the Eureka Company was not insolvent in the sense that its liabilities were greater than its assets. We also conclude that there was insufficient evidence to show that insolvency was "imminent" when the payment was made. According to the testimony, the Eureka Company continued in business for several months after the payment. Moreover at that time it had creditors to the amount of about $30,000, and during the period that it continued in business it paid off all of these creditors except $3,469.09. They represented, with unimportant exceptions, obligations incurred no earlier than January and February, 1930. Such conduct indicates that there must have seemed a fair chance of keeping the enterprise afloat until it weathered the storm. Had this not been so, those operating the Eureka Company would hardly have continued in business for several months and have paid off nine-tenths of the creditors which they had at the time they obtained the advances from Etco. The risk they took was one common enough among merchants and one not infrequently resulting in success. In these circumstances there was warrant for the conclusion of the trial judge that the facts did not point to insolvency with any such certainty or probability as to make it "imminent."

■ The appellant contends that, irrespective of whether the Eureka Company was not proved insolvent when it made the transfer in the sense intended by the Bankruptcy Act, it had nevertheless refused to pay its "obligations when due," and was therefore insolvent within the meaning of section 15 of the Stock Corporation Law of the state of New York. But it had not refused or failed to pay any note or other instrument in writing whereby one party contracts with another for the payment of money.

In Tierney v. Dowd & Co., 238 N. Y. 282, 287, 144 N. E. 583, 584, the New York Court of Appeals, per Lehman, J., discussed the meaning of section 15, and concluded that the words "notes or other obligations" in the statute did not include indebtedness for merchandise or for work, labor, and service upon a running account which had not been "embodied in some more or less formal writing." He cited Munzinger v. United Press, 52 App. Div. 338, 65 N. Y. S. 194, 196, where Justice Rumsey, writing for the Appellate Division, First Department, discussed the meaning of section 48 of the former Stock Corporation Law from which the

present section 15 is taken. The Appellate Division had reached there the same conclusion as the Court of Appeals in Tierney v. Dowd & Co., supra, and said that "running accounts * * * did not constitute any obligation within the meaning of section 48, and therefore the plaintiff cannot stand upon the ground that the transfer * * * was void because the company had refused to pay its notes or obligations."

It is to be noted in this connection that the language in the last clause quoted from the New York statute does not provide generally that any transfer of property by a corporation which shall have refused to pay any of its "notes or other obligations, when due," shall be invalid, but only provide that no transfer "of any property of any such corporation * * * when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * *" It has been plausibly argued that, even if the corporation is insolvent, or its insolvency was imminent, the words "such corporation" in the second clause of section 15 only invalidate transfers by "such" a corporation as is described in the first clause of the section, namely, a corporation "which shall have refused to pay any of its notes or other obligations when due." But this limitation was held in Caesar v. Bernard, 156 App. Div. 724, at page 729, 141 N. Y. S. 659, not to be permissible, and that decision was affirmed in the Court of Appeals on the opinion below at 209 N. Y. 570, 103 N. E. 1122. Matters v. Manufacturers' Trust Co. (C. C. A.) 54 F.(2d) 1010, at page 1015. Consequently, if the corporation had been insolvent, or its insolvency imminent, at the time when the payment was made, the second clause of section 15 would have been applicable.

The first clause of section 15 does not apply because the transfer was not made by a corporation that had refused to pay any of its "notes or other obligations." The second clause does not apply because the corporation was not "insolvent or its insolvency imminent."

It seems clear from the foregoing that no preference was effected under section 60b of the Bankruptcy Act and that the transfer was not in violation of section 15 of the New York Stock Corporation Law. This is because, when the transfer was made, (1) the assets of the Eureka Company were found to be greater than the liabilities; (2) insolvency was not imminent; (3) the company had not "refused to pay any of its notes or other obligations"; and (4) in such circumstances there could not be any intent to prefer or reasonable cause to believe that a preference would result.

The decree of the District Court is accordingly affirmed.