### WEIL v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### Nos. 394, 395.

Circuit Court of Appeals, Second Circuit.
July 26, 1937.

Thomas M. Wilkins, of Washington, D. C., for petitioners.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In 1932 additional income taxes for the years 1924, 1925, 1927 and 1928 were assessed against B. J. & L. V. Weil, Inc., a New York corporation. The corporation was dissolved in April, 1932, and no part of these additional taxes, amounting to $31,254.31 plus interest, has been paid. Under section 280 (44 Stat. 61) and section 311 (44 Stat. 77, 26 U.S.C.A. § 474 (b), of the Revenue Act of 1926 and section 311 of Revenue Act of 1928 (45. Stat. 860 [26 U.S.C.A. § 311 and note]), the petitioners have been held liable as transferees in the sum of $17,679.76 because the corporation, while insolvent, transferred to them in satisfaction of debts owing to them certain assets having a net book value of this figure, which the Board found to be their value.

The petitioners were the only stockholders and officers of the taxpayer corporation from its organization in 1923 to its dissolution in 1932. Its business was dealing in real estate. On or about December 31, 1931, the petitioners caused it to sell to them part of its assets for a price which was paid by canceling indebtedness of $122,513.49 owing to them by the corporation for advances and undrawn salaries, $40,000 against salaries, and the remainder against advances. The properties transferred consisted of office fixtures, three pieces of encumbered real estate, and the balances ·due on five second mortgages, three third mortgages, and one fourth mortgage. The book value of the office fixtures was $1,113.62. The total cost to the corporation of the three pieces of real estate was $711,875.30. At the date of sale the depreciation reserve on them on the corporation's books amounted to $131,017.50, and they were encumbered by mortgages for $671,000. They had been operated at substantial losses during 1931. The unpaid balances on the mortgages transferred totaled $106,708.34, but some of them were in default on December 31, 1931. The book values of all of the properties sold to the petitioners was $17,679.76. In 1932 the petitioners collected $3,022.90 of principal due on two of the mortgages, but they never collected any further principal on any of them. Five of them have been lost through the foreclosure of the prior mortgages, two in 1932, one in 1933, and two in 1934. Both before and after the transfer to the petitioners the corporation was insolvent. The Board found that after this transfer it retained ·loans receivable of $1,460.84 and two pieces of encumbered real estate having a book value of $190,185.41, which were conveyed to the mortgagees early in 1932 for what it would have cost the latter to foreclose. The Board made no finding

as to the corporation's cash position at the close of 1931. According to Petitioners' Exhibit No. 1 (and there is no evidence to contradict it), the corporation ended the year with cash of $12,048.22. The value of the assets transferred to the petitioners was found by the Board to be $17,679.76—the same figure as the book value. Transferee liability of the petitioners was apparently based on the theory that, since the corporation was insolvent, the transfer "amounted to a fraud on the other creditors, including the government."

The transferee provisions of the revenue acts impose no new obligation upon a transferee of the property of a taxpayer; they merely provide a summary procedure for enforcing a liability imposed by the municipal law. Hatch v. Morosco Holding Co., 50 F.(2d) 138, 139 (C.C.A.2). At common law it was not illegal for a failing debtor to prefer one creditor over another. Merillat v. Hensey, 221 U.S. 333, 342, 31 S.Ct. 575, 55 L.Ed. 758, 36 L.R.A. (N.S.) 370, Ann.Cas.1912D, 497. The appellee relies upon section 15 of the New York Stock Corporation Law (Consol. Laws, c. 59). It seems clear that the Board did not make sufficient findings of fact to bring this statute into play. The first part of the section forbids a corporation to pay a debt to any of its officers, directors, or stockholders, if it "shall have refused to pay any of its notes or other obligations, when due." The words "notes or other obligations" mean written obligations. Tierney v. Dowd & Co., 238 N.Y. 282, 144 N.E. 583; Emerson v. Berman, 57 F.(2d) 637 (C.C.A.2). The Board made no finding that the taxpayer corporation had defaulted on any of its notes or written obligations. The latter part of the section deals with transfers by an insolvent corporation "with the intent of giving a preference to any particular creditor over any of the other creditors." Assuming that the value of the property transferred to the petitioners was $17,679.76, they received less than 15 per cent. on the amount of the indebtedness they canceled. There is no finding as to the amount of debts still owed by the corporation and no finding that the value of the property retained would not suffice to pay a like dividend of 15% to its other creditors. Nor did the Board make any express finding that the transfer to the petitioners was made with an intent to prefer them. The statement in the Board's opinion to the effect that "it favored the two creditors to the prejudice of others, including the government which had priority over general creditors in its claim for its taxes," can scarcely be so construed, since the assertion that other creditors were prejudiced may rest on the erroneous premise that the government's claim had priority. At the time of the transfer, the taxes in suit had not been assessed and no lien had arisen. R.S. § 3186 (as amended, 26 U.S.C.A. §§ 1560–1567). Intent to prefer must be proved to establish liability under the statute. Van Slyck v. Warner, 118 App.Div. 40, 103 N.Y.S. 1, affirmed 192 N.Y. 547, 84 N.E. 724; Drewen v. Union Discount Co., 32 F.(2d) 691 (C.C. A.2). With no finding as to intent to prefer, we think the Commissioner, upon whom is the burden of proof, failed to establish transferee liability.

Even were it possible to treat the above-quoted statement in the Board's opinion as a finding of intent to prefer, the Board's finding of a value of $17,679.76 for the assets transferred could not be sustained. This was the book value. The undisputed evidence shows that the book value of the transferred mortgages was too high. They were second, third or fourth mortgages and some of them were already in default. Although their face value was over $100,000, the petitioners have been able to collect only $3,022.90 and five of the mortgages have been lost by foreclosures. No witness testified as to actual value. Mr. Kisman's testimony that, after deducting from book value the liability of $1,600 assumed by the petitioners, "the net value of assets conveyed amounted to $16,079.98," cannot be read as an expression of opinion as to actual value. He was an accountant and auditor, and obviously he was stating the net book value after making the deduction. If the Board had found some figure less than the book value, we could not say there was no evidence to support it; but, when they adopt the exact book value as representing the value, despite the uncontroverted proof that the mortgages were carried at inflated values, we think the finding is unsupportable.

Orders reversed.